532 So.2d 976 (1988)
Frederick S. (Shawn) MARKS
v.
STATE of Mississippi.
No. 57853.
Supreme Court of Mississippi.
August 31, 1988.
Rehearing Denied November 9, 1988.
*977 Leslie Scott, Jackson, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and ZUCCARO, JJ.
SULLIVAN, Justice, for the Court:
Frederick S. Marks was tried and convicted by the Circuit Court of Harrison County, Mississippi, for the murder of his wife, Mary Woods Marks. He was sentenced to a term of life imprisonment in the custody of the Mississippi Department of Corrections.
At the time of her death Mary Woods Marks was separated from the defendant. Frederick Marks had just been released from a two day alcohol detoxification program at the local Veterans Administration Hospital.
On his release from the hospital Marks frequented some local watering holes, had several alcohol drinks, managed to purchase himself a knife, and also to arrange a meeting with his wife.
Marks arrived at his wife's home approximately 5 1/2 hours after he made his first *978 watering hole stop. Mrs. Marks was not at home when he arrived at her house, but Ronald Woods, her retarded 18 year old son, was. Ronald let Mr. Marks inside the home to wait.
Upon Mrs. Marks' return, a brief conversation ensued between the parties which quickly led to a quarrel. Defendant's version is that his wife took control of the knife, and when he attempted to get it back, he was cut on the hand. Mrs. Marks then fled the trailer with Marks in pursuit. At some point outside the trailer Marks regained possession of the knife and began to stab his wife. The autopsy report revealed that there were 19 stab wounds including penetration of the left lung, heart, diaphragm, and spleen.
Defendant immediately fled into the woods but was apprehended minutes later. While in custody Marks made several statements indicating that he knew of, and was involved in, his wife's death.
At trial, the State presented evidence of the defendant's past treatment of the victim, and there was also testimony of eyewitnesses who observed the defendant over the victim's body with his arm going up and down; one witness actually saw the knife in his hand. Various investigating officers testified as to the post-arrest events, including statements made by the defendant. The defendant testified in his own behalf.
The defendant denied ever intending to kill his wife. His claim was that he acted in the heat of passion. The jury was instructed on murder and manslaughter, and they returned a guilty verdict for the crime of murder. Marks assigns the following errors:
1. The judgment of the lower court should be reversed since the appellant was denied his sixth and fourteenth amendment rights to effective assistance of counsel at trial;
2. The lower court erred in admitting State's exhibits 2, 7, 8, 9, 32, 33, 34, 35 and 36, as each was either cumulative or not probative and unduly prejudicial;
3. The lower court erred in failing to grant the appellant's motion for mistrial after the witness Leslie testified to acts of the appellant other than those for which he was on trial in violation of the court's order in limine;
4. The lower court erred in admitting the hearsay testimony of several witnesses concerning out of court statements made by Ronald Woods; and
5. The lower court erred in refusing to declare a mistrial due to statements made by the prosecutor in his closing argument concerning the appellant's potential sentence.

I.

THE JUDGMENT OF THE LOWER COURT SHOULD BE REVERSED SINCE THE APPELLANT WAS DENIED HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.
At the outset it should be pointed out that the attorney for Marks at trial was allowed to withdraw, and counsel on appeal did not represent him at the trial stage. Claims of ineffective assistance of counsel in this State are consistently handled under the two part test of Strickland v. Washington 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), with its accompanying presumptions. Under the Strickland formula, the defendant must show that (1) his counsel's performance at trial was deficient, and (2) that but for counsel's deficient performance, the result of the trial would have been different.
Frederick Marks alleges three instances of ineffective assistance: (1) counsel's failure to follow up his motion for appointment of additional counsel; (2) counsel's failure to call the defendant's treating physician at the VA Hospital to testify concerning the defendant's state of mind on the day in question; and (3) counsel's elicitation from the defendant, on direct examination, of his prior criminal activities.
At the trial, defense counsel withdrew his motion for the appointment of *979 additional counsel because he had successfully developed the case, thereby obviating the need for second counsel. Also, the trial judge limited the prosecution to having only one person arguing a particular point.
Mississippi Code Annotated, Section 99-15-17 (Supp. 1987), does allow for the appointment of two attorneys in capital cases. Marks' was a capital case for it carried a penalty of life imprisonment. Mississippi Code Annotated, Section 1-3-4 (Supp. 1987). However, Section 99-15-17 "does not mandate that two attorneys be appointed." Smith v. State, 445 So.2d 227, 230 (Miss. 1984).
This record does not disclose to this Court that Marks was prejudiced or that the trial would have differed in result had two attorneys been used. The case was not so complex that one attorney could not provide a legally sufficient defense.
In his second allegation of ineffectiveness, the defendant asks us to reverse his conviction because no expert testimony was offered on the issue of his capacity to commit premeditated murder. Marks appears to be arguing that his diminished capacity made this a crime of passion and not premeditation. Therefore, his treating physician at the VA Hospital should have been called as a witness to testify concerning his diminished capacity. This argument by the defendant assumes that the doctor would have testified favorably. Unfortunately, the record does not reveal what testimony the doctor would have given.
The record does, however, show that a psychiatric examination was performed on the defendant, the results of which are not shown. We do know that the defendant did not plead an insanity defense. It is equally clear that his alleged diminished capacity, if any, resulted in part, if not in whole, from his voluntary intoxication, and that is not a defense in this case. Smith v. State, 445 So.2d at 231.
We are limited to the record before us, and therefore, should not engage in hypothetical assumptions concerning the value of an uncalled witness. Vinson v. Johnson, 493 So.2d 947, 950 (Miss. 1986). Marks does not show, other than hypothetically, how his attorney's decision not to call the doctor was a professionally unreasonable error resulting in prejudice to his defense.
Marks' third complaint of ineffective assistance was the action of his trial counsel by exposing the defendant's entire criminal record on direct examination. Marks complains that certain otherwise inadmissible matter was exposed. Specifically, Marks complains of the following matters brought out on direct examination:
(1) Prior DUI convictions in Nevada and Gulfport.
Marks' trial was held in August, 1985, before the effective date of the Mississippi Rules of Evidence. Under prerules of evidence law, a DUI conviction was regarded as a misdemeanor of sufficient gravity so as to allow its use for impeachment purposes; thus, the prohibition in Mississippi Code Annotated, Section 63-9-15 (1972), relating to misdemeanor traffic offenses does not apply to DUI convictions. Wetz v. State, 503 So.2d 803, 811 (Miss. 1987). Therefore, defense counsel did not commit a professionally unreasonable error by bringing these convictions to the jury's attention.
(2) The time served in prison for two prior felony convictions.
Under the law applicable at the time of this trial, the credibility of the defendant could have been impeached by reference to his former felony convictions, but it was not permissible to inquire into the punishment given as a result of these convictions. Murray v. State, 266 So.2d 139, 141 (Miss. 1972), cert. denied, 411 U.S. 907, 93 S.Ct. 1929, 36 L.Ed.2d 419 (1973). Therefore, the defense attorney did elicit information that was otherwise inadmissible.
However, this error is controlled by the principle announced in Rooney v. State, 167 Miss. 532, 142 So. 475 (1932), wherein it is stated:
However, since the appellant admitted that he had been convicted of [felonies], it is hardly probable that competent and intelligent jurors did not know that the *980 crime for which he had been convicted was punishable by imprisonment in the penitentiary, and we do not think that the fact that the jurors were informed in this case that the appellant had served a term in the penitentiary would justify or warrant a reversal; . ..
167 Miss. at 539, 142 So. at 477.
It seems unreasonable to hold that this is not reversible error if committed by the State, yet it is ineffective assistance when elicited by the defendant's own counsel.
(3) A prior public intoxication charge, two prior fugitive warrants, and a prior charge of possession of a stolen vehicle.
In interpreting the law applicable on the day of the Marks' trial, we have stated that "anything less than a final judgment conclusively establishing guilt cannot be used" to impeach a witness. Cannaday v. State, 455 So.2d 713, 719 (Miss. 1984); Murphree v. Hudnall, 278 So.2d 427, 428 (Miss. 1973). Once again, defense counsel elicited from the defendant otherwise inadmissible information.
Marks argues that these otherwise inadmissible matters greatly impeached his defense based on lack of intent to kill. The prosecution argues, however, that defense counsel wanted to show that the defendant had no history of criminal violence on his record, thereby supporting his claim of lack of intent to kill. Marks rebuts by arguing that such an argument would have been much more effective if the jury had never been exposed to his entire criminal history.
These arguments pointedly demonstrate why these allegations cannot support a claim of ineffective assistance of counsel at trial. First, defense counsel does argue in his closing statement that there is nothing in the defendant's history about violence. Thus, there appears to be a legitimate strategy afoot. Second, the defendant's retrospective argument on appeal calls into question the qualitative value of trial counsel's strategy. As an appellate court, we cannot allow the "distorting effects of hindsight" to overcome the presumption that the decisions of counsel are strategic, and that they fall "within the wide range of reasonable professional conduct." See Leatherwood v. State, 473 So.2d 964, 969 (Miss. 1985).
More generally, the inadmissible matter was merely cumulative of other admissible matter, all of which legitimately indicated a lack of criminal violence. There is no need to decide the question of deficient performance because, even assuming that trial counsel committed unprofessional error, there was no resulting prejudice. To reverse on these facts would invite trial counsel, in cases where proof of guilt is strong, to intentionally shoot themselves in the foot in order to secure a reversal on appeal.
This assignment of error is without merit.

II.

THE LOWER COURT ERRED IN ADMITTING STATE'S EXHIBITS 2, 7, 8, 9, 32, 33, 34, 35 AND 36, AS EACH WAS EITHER CUMULATIVE OR NOT PROBATIVE AND UNDULY PREJUDICIAL.
We will not reverse a lower court on the ground that photographs of the deceased were admitted into evidence unless the lower court abused its discretion by admitting photographs with no probative value except to inflame the jury. Koch v. State, 506 So.2d 269, 271 (Miss. 1987); Ruffin v. State, 447 So.2d 113, 120 (Miss. 1984).
Exhibits Nos. 2, 7, 8, and 9 are pictures of the victim as she was found at the scene of the crime. Although Marks argues that they were cumulative, the jury was entitled to see the manner in which the deceased met her death. This is particularly true since the defendant testified to having no memory of the immediate circumstances surrounding the killing. See, Stevens v. State, 458 So.2d 726, 729-730 (Miss. 1984); King v. State, 408 So.2d 1375, 1376 (Miss. 1982).
Exhibits Nos. 32-36 are nude, autopsy pictures clearly indicating the number and placement of stab wounds. Marks argues that these pictures are cumulative of the autopsy report. The court admitted *981 the pictures as evidence of the defendant's state of mind, and to show the placement of the stab wounds. We have previously upheld the admission of photographs to show the placement of wounds, the number of wounds, the extent and force of violence used, and as to the defendant's state of mind. See Wetz v. State, 503 So.2d 803, 812 (Miss. 1987) (admissible as evidence of malice); Cardwell v. State, 461 So.2d 754, 760 (Miss. 1984) (location of wounds, multiplicity of wounds, extent and force of violence used). Therefore, there was no abuse of discretion in admitting these exhibits into evidence, and this assignment is without merit.

III.

THE LOWER COURT ERRED IN FAILING TO GRANT THE APPELLANT'S MOTION FOR MISTRIAL AFTER THE WITNESS LESLIE TESTIFIED TO ACTS OF THE APPELLANT OTHER THAN THOSE FOR WHICH HE WAS ON TRIAL IN VIOLATION OF THE COURTS ORDER IN LIMINE.
Here Marks contends that the lower court erred in not granting a mistrial when a witness, Roy Leslie, testified to threats made against him by the defendant a few days prior to the killing of Mrs. Marks. Prior to taking the stand, Mr. Leslie was instructed by the court as follows:
BY MR. COX: I understand this man will be able to testify to threats that he observed or heard while the defendant was present.
BY THE COURT: Absolutely. Do you understand that. You will be able to testify if there has been any threats in your presence from this man and he was present, he would have to be present.
BY MR. WUSNACK: Who would they be directed to, only to the victim.
BY THE COURT: Yes. Any threats that were made to you by this man or [sic] not admissible. Any threats that this man made in your presence to the deceased are admissible. You can tell us about those; do you understand that. And you can tell us what you with you [sic] own senses saw for that period of time she was working with you, not to what she told you as to who did it. If Mr. Wusnack ask you who did it, and the other side doesn't object then you can tell us.
During direct examination, Mr. Leslie testified as follows:
Q. Tell the jury what you saw and heard while you were there and the defendant was there and Mrs. Marks was there?
A. Mrs. Marks wanted to leave Mr. Marks, he didn't want her to leave and he told her she couldn't leave and Mrs. Marks went on and left with the police officer that was there. And when she started to leave, Mr. Marks said, "It's all your fault and I will get you for it." I went on and left too.
BY MR. WUSNACK: I would object to that. That's what the Court admonished him not to say.
A contemporaneous objection by defense counsel was sustained on the basis that the testimony of the witness exceeded the court order in limine, but the court overruled the defendant's motion for mistrial.
Defense counsel did not request the judge to admonish the jury to disregard the testimony. It is the rule in this State that where an objection is sustained, and no request is made that the jury be told to disregard the objectionable matter, there is no error. Simpson v. State, 497 So.2d 424, 431 (Miss. 1986); Gardner v. State, 455 So.2d 796, 800 (Miss. 1984).
The substantive basis of this assignment is the rule against the inferential use of character evidence. The character of an accused is inadmissible evidence to show by inference that he acted in conformity therewith on a particular occasion. Massey v. State, 393 So.2d 472, 475 (Miss. 1981); Sharplin v. State, 330 So.2d 591, 596 (Miss. 1976); see also, M.R.E. 404(a).
It is clear that the matter related by the witness Roy Leslie was inadmissible, both under the rule set out above and under the court's order in limine. Marks apparently contends that the jury could draw only one inference from the fact that he threatened another person prior to killing his wife; *982 that is, because the defendant previously threatened Mr. Leslie, he therefore must be guilty of the premeditated murder of his wife. Marks sees a mistrial as the only cure for this allegedly prejudicial error.
In overruling his motion for mistrial, the trial judge concluded that the witness was confused about the instructions given to him, and that the defendant was not prejudiced by his testimony. We agree. This is not a case where the prosecution set out in a deliberate fashion to sway the jury with repeated references to the defendant's character trait for violence. This is not a case like Massey v. State, supra, where the State continuously brought up evidence of other crimes and bad acts of the defendant so as to substantially prejudice him.
On the contrary, this is a case where a witness inadvertently exceeded the testimonial bounds of the court order. Rule 5.15 of our Uniform Criminal Rules of Circuit Court Practice states that, on motion of the defendant, the court may declare a mistrial for occurrences during trial which result in "substantial and irreparable prejudice to the defendant's case." Here, the court sustained the objection to Leslie's response. Further, the jury was ultimately instructed to disregard all evidence excluded by the court. Given the strength of the prosecution's other evidence against the defendant, this minor breach underlying this assignment of error was of such insufficient moment as to render it harmless.
This assignment of error is without merit.

IV.

THE LOWER COURT ERRED IN ADMITTING THE HEARSAY TESTIMONY OF SEVERAL WITNESSES CONCERNING OUT OF COURT STATEMENTS MADE BY RONALD WOODS.
Ronald Woods is the retarded son of the deceased. He was an eyewitness to this crime, but he was not called to the stand by the prosecution. Through the mouths of Burnett Fortenberry, Benton Fortenberry, and Brenda Dean, the State introduced some out of court statements made by Ronald Woods. Marks argues that these statements were inadmissible hearsay constituting grounds for reversal.
Specifically, Burnett Fortenberry testified over objection, as follows:
A. He was  at first he was there with them and he was trying to pull Mr. Marks off of her, and then he ran to the fence and he hollered, "Fred done it, Fred killed my momma."
Q. You're talking about Ronald Woods said this?
A. Ronald Woods, yes.
Benton Fortenberry testified as follows:
Q. While Mrs. Marks and Mr. Marks were tussling and on the ground, what was the son doing, Ronald?
A. He was telling them, "Stop stop, not do that."
Q. He was telling Mr. Marks that?
A. "Stop."
Brenda Dean testified as follows:
A. I did go across the street, there was a fence there and I went across the street because I was concerned with the young boy that was over there and he was hollering, "Fred did it, Fred killed my momma, my momma is not dead, is she, she'll be back, they just take her to the hospital, Fred did it." And he would run back and forth to the fence, and he said, "Help my momma." And I told him, "Yes, we had somebody coming to help her."
These statements are clearly hearsay. They are out of court statements of a declarant repeated at trial by a witness, and offered to prove the truth of the matter asserted. See M.R.E. 801. The trial judge admitted these statements as an exception to the hearsay rule, without specifically stating what the exception was. The defendant only objected as to Burnett Fortenberry's testimony. The statements of Ronald Woods were introduced without objection through the mouths of Benton Fortenberry and Brenda Dean. No procedural bar was argued, and none should be raised, however, because, given the similarity of the testimony, the judge's ruling on the initial objection effectively disposed of the *983 need for any subsequent objections to the hearsay statements.
Under the law in effect at the time of the trial the hearsay statements of Ronald Woods were clearly admissible under the so called res gestae exception to the hearsay rule. We cannot conclude that the trial judge below abused his discretion.
Under the Mississippi Rules of Evidence, effective from and after January 1, 1986, the hearsay statements complained of would be admissible as exceptions to the hearsay rule. The hearsay statements are admissible under either the present sense impression exception or the excited utterance exception, both of which encompass the essential elements of the former res gestae rule. See M.R.E., 803(1), (2) Comment.
This assignment is without merit.

V.

THE LOWER COURT ERRED IN REFUSING TO DECLARE A MISTRIAL DUE TO STATEMENTS MADE BY THE PROSECUTOR IN HIS CLOSING ARGUMENT CONCERNING THE APPELLANT'S POTENTIAL SENTENCE.
The objectionable comments were made during the prosecution's closing argument. They are as follows:
This about him blacking out is just ridiculous. In fact, he told Detective Pat Pope and you heard Detective Pope testify, "I remember exactly what happened that day, I didn't black out, I'm guilty, I killed her and I'm ready to go to prison for life." That's what he told you on cross examination. "I'm ready to go to prison for life." If you convict him of murder, that will happen. A manslaughter conviction will not penalize this defendant enough for the heinous and atrocious crime that he has committed, he will get off. A murder conviction will punish him sufficiently and that is the only conviction that will do that. As an Assistant District Attorney in this jurisdiction, the only proper verdict will be a murder conviction.
We have consistently disapproved of arguments which refer to the potential sentence in a given case. See, Williams v. State, 445 So.2d 798, 813 (Miss. 1984) ("Reference to the possibility of parole should the defendant not be sentenced to die are wholly out of place... ."); Smith v. State, 220 So.2d 313, 317 (Miss. 1969) (improper to argue that finding defendant not guilty by reason of insanity would result in his being released once being found sane); Hartfield v. State, 186 Miss. 75, 91, 189 So. 530, 533 (1939) (prejudicial error to tell the jury that a manslaughter verdict or a life sentence, would amount to no punishment at all); Abney v. State, 123 Miss. 546, 550, 86 So. 341 (1920) (reversible error for the prosecutor, in urging a murder conviction, to state that the maximum penalty for manslaughter is 20 years and the minimum is in the discretion of the court); Minor v. State, 101 Miss. 107, 107-08, 57 So. 548 (1911) (reversible error to state in closing argument that, if manslaughter verdict is brought in, judge does not have to sentence defendant to the penitentiary); Windham v. State, 91 Miss. 845, 851, 45 So. 861, 862 (1907) (in a murder case it is improper for a prosecutor to argue in closing argument about the punishment that can be imposed; in a close case such as this, argument that judge could sentence defendant to term in penitentiary for manslaughter was "a very fine bid for a conviction of manslaughter.").
The problem with arguments such as these is that they invite the jury to convict with regard to the punishment, not with regard to the evidence before them, and the jury should have no concern with the quantum of punishment to be imposed. Abney, supra. However, condemnation of such arguments by prosecutors is our easiest task. The more formidable task is in deciding whether this improper argument rises to the level of reversible error. There is no question that the defendant killed the victim, but there is a close question as to whether or not it was manslaughter or murder. The objectionable remarks were the prosecution's final urging to the jury to convict the defendant of murder. It could be that the prosecutor's remarks tipped the *984 scales in favor of murder. By the same token, the jury's mind may have already been made up prior to hearing these remarks.
Regardless, to say that a man should be convicted of murder, even though the jury may honestly believe him only guilty of manslaughter, "is equivalent to asking the jury to disregard the legal rights of the accused which entitle him to have the grade of the offense determined by the facts alone of the particular crime for which he was then on trial," without regard to whether he will be sufficiently punished. Hartfield v. State, 186 Miss. at 90, 189 So. at 533. As stated in Hartfield:
If it be true, as this Court has held in the Windham and Minor cases, supra, that it is reversible error to tell a jury what punishment can be imposed by the court in the event of a conviction of manslaughter, then most assuredly it should constitute such error for the jury to be told that there is no use for it to return a manslaughter verdict, or for a life sentence, on the asserted ground that in such event the court could not punish the defendant at all. If it is prejudicial to inform the jury as to the extent of the punishment fixed by law in a case where a manslaughter conviction is permissible, then certainly it is prejudicial to tell the jury, contrary to the law, that such a conviction would carry no punishment at all in the instant case.
186 Miss. at 91, 189 So. at 533.
The question of punishment is categorically unrelated to whether the verdict should be murder or manslaughter.
Appellate review simply does not afford the opportunity to probe the minds of the jurors to determine what effect, if any, those statements had on their decision. All that can be said is that there exists a very real possibility that the jury verdict was secured in part, if not in whole, by the improper and irrelevant comments of the prosecutor. The remarks were incompetent proof of the degree of defendant's guilt, and incompetent matter, inflammatory in character, presented to a jury is presumptively harmful. Howell v. State, 411 So.2d 772, 776 (Miss. 1982).
There is no question but that the defendant killed the victim in a most cruel manner. The defendant admits that he stabbed his wife to death. He denies having intended to do so, however.
Having said all of this, we are constrained to accept the position of the state that defense counsel did not contemporaneously object to the prosecutor's closing argument, and that this assignment of error is procedurally barred.
After the jury had been excused from the courtroom, defense counsel made his motion for mistrial. The trial court found that the argument was improper but not reversible error, and refused to order a new trial on this ground.
This tactic clearly constitutes a procedural bar as explained by this Court in Johnson v. State, 477 So.2d 196, 209-10 (Miss. 1985):
We next observe it is the duty of a trial counsel, if he deems opposing counsel overstepping the wide range of authorized argument, to promptly make objections and insist upon a ruling by the trial court. The trial judge first determines if the objection should be sustained or overruled. If the argument is improper, and the objection is sustained, it is the further duty of trial counsel to move for a mistrial. The circuit judge is in the best position to weigh the consequences of the objectionable argument, and unless serious and irreparable damage has been done, admonish the jury then and there to disregard the improper comment. (Citations omitted).
See also, Hill v. State, 432 So.2d 427, 439 (Miss. 1983).
Because of the procedural bar, and this Court's opinion in Johnson v. State, this assignment of error is without merit.
THE CONVICTION OF FREDERICK S. (SHAWN) MARKS FOR THE MURDER OF HIS WIFE AND HIS SENTENCE TO SERVE A TERM OF LIFE IMPRISONMENT IN THE MISSISSIPPI DEPARTMENT *985 OF CORRECTIONS ARE AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.