KITCHENS, Justice,
dissenting:
¶ 32. The majority finds that the trial court did not err when it determined that Jimmie Roach had failed to make a threshold showing that the jury in his trial was exposed to extraneous, prejudicial information. With respect, I disagree. Juror Derrick Tate consistently testified that he *136 was exposed to outside (and radically incorrect) information regarding the sentence that Roach would receive if the jury found him guilty. The severity or leniency of a defendant’s possible sentence is purposely withheld from juries exactly because of its considerable potential to influence their verdicts. Because I believe that Roach made a threshold showing that at least one juror was exposed to extraneous and presumptively prejudicial information, and the trial court erred in finding otherwise, I respectfully dissent.
¶ 33. Tate was asked multiple times by the defense, the prosecution, and the court, how and to what extent his knowledge of Roach’s purported sentence affected his deliberation. As the majority correctly finds, this was a direct violation of Mississippi Rule of Evidence 606(b), which prohibits inquiry into the effect of extraneous information upon a juror’s decision. The only thing to which Tate properly could have testified is whether he was exposed to outside information, what the information was, how he was exposed to it, and whether he told the rest of the jury. The trial court erred when it permitted Tate to testify about the effect the extraneous information might have had on his deliberation and ultimate decision. The court compounded the error when it relied upon Tate’s “effect testimony” regarding the effect the information had on his decision in deciding to deny relief to Roach:
I asked him a direct question of how much — if this contact occurred, how did it affect his — his deliberations. He said none at all. [Defense Counsel] asked him the same question. He said it affected it a little bit. [The Prosecutor] asked him the same question. He said it didn’t affect it at all.
So if Mr. Tate had just been consistent with what is written in his affidavit, I think this would have been a clear-cut case — that it would have been — the relief would have been granted. But unfortunately Mr. Tate equivocated, as [Defense Counsel] said, on more than one occasion. And on that basis I can’t consider his testimony because he continued to tell whoever asked him the question what they wanted to hear at that time.
¶34. Thus, the trial judge acknowledged that he did not consider Tate’s testimony because Tate had testified inconsistently about the effect his knowledge of Roach’s probable sentence had on his decision. Had the judge properly restricted Tate’s testimony, the testimony would have shown only that Tate heard a police officer say that Roach would receive five to eight years if convicted, that he was unsure about how he had heard that information, that the officer in question claimed not to remember making that statement, and that Tate did not relay that information to other jurors. It is true, as the majority notes, that the details of Tate’s story regarding how he heard about Roach’s potential sentence changed multiple times throughout the hearing.[1] However, he never wavered concerning the only relevant and material fact of the entire proceeding: he heard a police officer saying that Roach would be sentenced to between five and eight years if found guilty. Under what circumstances this information came to Tate is of less importance than that he was exposed to it at all. See Brake v. Speed, 605 So.2d 28, 38 (Miss.1992) (“[I]t is the nature of the information acquired and its relation to material issues in the case which controls, no matter whether the information was accidentally, casually or deliberately acquired.”). Even if the trial court based its decision on the *137 inconsistencies in how Tate actually heard the information, that decision still would be erroneous, because the manner in which Tate received the information was irrelevant to his possession of it. It is important to note that, in every version of his story, Tate claimed he heard the outside information from a police officer — an authority figure who most laypersons would deem to be in the know about such matters. Further, in making its decision, the trial court relied heavily on information that is forbidden from judicial inquiry. Because the trial court stated that, without Tate’s equivocation regarding the influence the extraneous information had on his decision, it would be a “clear-cut case” in which relief would be granted, I find that the trial court’s reliance on that prohibited information amounted to error.
¶ 35. The type of information to which Tate was exposed was inherently prejudicial. The severity or leniency of a defendant’s potential sentence is kept from jurors because they are charged with finding a defendant guilty or not guilty based only on the evidence and the judge’s written instructions. Typically, sentencing is the province of the judge, and “[t]he sole duty of the jury [i]s to pass on the guilt or innocence of the accused.” Smith v. State, 288 So.2d 720, 722 (Miss.1974). “[T]he jury should have no concern with the quantum of punishment to be imposed.” Marks v. State, 532 So.2d 976, 983 (Miss.1988). In determining the impropriety of a prosecutor’s closing argument that a manslaughter conviction would not sufficiently punish a defendant the way that a murder conviction would, this Court has said that “[t]he question of punishment is categorically unrelated to whether the verdict should be murder or manslaughter.” Id. at 984.[2] “The jury have nothing to do with, and should be told nothing of, the character or degrees of punishment in any case whatever....” Ellerbee v. State, 79 Miss. 10, 30 So. 57, 58 (Miss.1901).
¶ 36. It is clear from our jurisprudence that juries must remain insulated from information regarding sentencing, precisely because such information can affect their verdicts. In this case, a juror heard from a police officer that Roach would get five to eight years if convicted. Given that Roach was eligible for, and actually received, one hundred more years than Tate heard that he would, I find that this extraneous information, which minimized the seriousness of the jury’s verdict, was extremely prejudicial to Roach.[3] Additionally, this kind of outside information can cut both ways. Had Tate learned that Roach could be sentenced to 108 years upon conviction, and subsequently determined that he could not vote guilty due to the potential severity of the punishment, it is almost certain that the State would correctly contend that he was exposed to prejudicial, extraneous information.
¶ 37. The fact that Tate testified that he did not tell other jurors about this information is irrelevant. It takes but one dissenting vote to cause a mistrial in a criminal case. URCCC 3.10. Moreover, we do not, nor should we, know the extent of Tate’s influence on his fellow jurors during their deliberations. He may or may not have been a leader on this particular jury. Rule 606 prohibits any inquiry into the effect that extraneous information *138 had on a jury’s decision; so, we are left only with the information that, in this case, was improperly received by one member of the jury. Tate consistently testified that he heard a police officer say that Jimmie Roach would receive five to eight years if convicted. This is all that the trial court should have considered. It cannot reasonably be argued that, if true, this information was not prejudicial to Roach, as he actually was eligible for roughly fourteen to twenty times this sentencing range. Roach has shown “that there is sufficient evidence to conclude that good cause exists to believe that there was in fact an improper outside influence or extraneous prejudicial information.” Gladney v. Clarksdale Beverage Co., Inc., 625 So.2d 407, 418 (Miss.1993).
¶ 38. Because Roach’s trial occurred nearly nine years ago, a new hearing with the jury to determine if they were exposed to the information would be inefficient and of little value. Further, since we are prohibited from inquiring into the effect of any prejudicial information on their deliberations, I fail to see the value of such a hearing. See Rutland v. State, 60 So.3d 137, 146 (Miss.2011) (Kitchens, J. dissenting). Accordingly, well-established and sound Mississippi precedent requires us to assume that the extraneous information affected the juror’s decision. Thus, the only remedy appropriate is for this Court to reverse Roach’s conviction and remand for a new trial. Therefore, I respectfully dissent.
DICKINSON, P.J., CHANDLER AND KING, JJ., JOIN THIS OPINION.

. It is worth noting that this hearing was held more than six years after Roach’s trial.

. The Court affirmed, however, because defense counsel made no contemporary objection to the closing argument and the issue was procedural!/ barred on appeal.

. This is not the only prejudicial information to which this juror was exposed. The entire jury witnessed Roach’s main witness being arrested in court after testifying. Roach v. State, 7 So.3d 911, 929 (Miss.2009) (Kitchens, J. dissenting).