# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-01741-SCT

*ADOFO MINKA*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/19/2015 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| | GREG RICHARD SPORE |
| TRIAL COURT ATTORNEYS: | MICHELE PURVIS HARRIS |
| | MERRIDA COXWELL |
| | ROBERT SHULER SMITH |
| | JACK BRADLEY McCULLOUCH |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAVID NEIL McCARTY |
| | MERRIDA COXWELL |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOSEPH SCOTT HEMLEBEN |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | AFFIRMED - 07/27/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., KITCHENS AND BEAM, JJ.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.     Adofo Minka was held in direct criminal contempt by Hinds County Circuit Court Judge Jeff Weill Sr. for unprofessional and contumacious behavior during the trial of his client which resulted in a mistrial.  Minka was fined $100 and ordered to pay the costs of the jury in the amount of $1,350.  Minka appeals to this Court, claiming (1) he did not improperly comment during opening statements on a potential sentence his client might

receive, which triggered a sua sponte objection from the trial court and was a key basis for the State's request(s) for a mistrial; (2) Minka's comments do not warrant criminal sanction because counsel have broad latitude during opening statements and closing arguments; (3) the record does not support a finding beyond a reasonable doubt that any of Minka's comments or conduct constitute criminal contempt; and (4) even if this Court affirms the trial court's contempt and sanction order, the monetary fine was $650 more than it should have been; therefore, the sanction amount must be reversed, lowered, and rendered.

¶2.     We find no merit in any of the points of contention argued by Minka on appeal. The record[1] before this Court proves Minka is guilty of criminal contempt beyond a reasonable doubt. And the trial court had the authority to issue a monetary fine and costs in the amounts imposed. Therefore, we affirm the trial court's contempt and sanctions order.

**FACTS**

¶3.     On November 18, 2015, Minka appeared before Hinds County Circuit Court for the criminal trial of his client William Wilson, charged with the crime of felon in possession of a firearm. After the State concluded its opening statement, Minka began his opening statement, saying:

> I've sat through just listening to the State's opening statement. I've sat over at the defense counsel table and I've talked to my client. And as I sat over

---

[1] The record includes only a transcript of the proceedings that occurred during opening statements and closing arguments, along with what the trial court stated into the record after granting the State's request for a mistrial in the underlying criminal case. No transcripts were provided for either the State's or the criminal defendant's case-in-chief. There is also an audio recording of the proceedings, which, like the transcripts contained in the record, covers only what occurred during opening statements and closing arguments.

2

there, I've been trying to take care of my fear. Fear is such a harrowing emotion. It grabs you, it takes hold of you; it can control you.

¶4. At that point, the trial court interjected and asked defense counsel and counsel for the State to approach the bench. Citing Rule 3.02 of the Uniform Rules of Circuit and County Court Practice (URCCC), the trial court told Minka that his argument was "not appropriate argument[; t]he purpose of opening statement is to lay out what you believe the evidence will show." The court said, "I don't know where this is headed, but it doesn't sound like it's headed toward the evidence." Minka responded, "It's headed there Judge. . . . I'm going to move quickly through this, Judge. I'm not going to take time. I understand what you're saying." The court replied, "All right. Well it's not just a question of time. This is not an emotional appeal, this is a laying out of the evidence. And so I'm just telling you, you need to not only move along, but move into what you expect the evidence will show."

¶5. Minka resumed his opening statement:

Sorry ladies and gentlemen of the jury, I'm just trying to have a conversation with you. You've heard the prosecution's story of this case. But fortunately ladies and gentlemen of the jury, there's two sides to every story. The prosecution wants you to merely believe that this is a case about somebody who is convicted of a felony and they were in possession of some firearm. According to what the prosecution is saying the evidence will show, my client . . . over there, should already be on the bus to Parchman Penitentiary. Simple enough: right? Wrong.

¶6. The trial court again interjected and asked counsel for both parties to approach the bench. The court instructed Minka not to go into what potential sentence the defendant might face. A back-and-forth ensued between Minka and the trial court, with Minka denying

3

he had commented on any potential sentence his client faced. The trial court said its ruling had been made and told Minka to finish his opening statement.

¶7. After the bench conference concluded, Minka said aloud in front of the jury, "I want the record to reflect that I never . . . made any statements . . . about . . . ." The trial court told counsel to approach the bench.

¶8. The court warned Minka that if he interrupted the court again and continued to talk after being instructed by the court not to, there would be serious consequences. The court then instructed Minka to finish his opening statement.

¶9. Minka continued his opening statement, saying:

> This is not what that case is about ladies and gentlemen. The case theory, that's not what it's about. This case is about unrestrained and unchecked power. It is about the power of the vice and narcotics task force and bout [sic] the power of the district attorney's office represented by Mr. Smith and Mr. Muccllouch [sic] sitting over here. It is about how power only cares about taking care of itself. It's about power betraying our trust. During the course of this trial you're going to hear from men who represent the powerful entities . . . .

¶10. The State requested a bench conference and objected to Minka's statement on the ground it was improper. The trial court asked Minka to explain why his statement was not improper. Minka responded:

> Because I said they [will] hear from the people coming up here, what the evidence [will] show. You want me to say what the evidence [will] show? Would that make the Court feel more comfortable?

¶11. The trial court sustained the State's objection, and instructed Minka to proceed. Continuing with his opening statement, Minka said to the jury:

4

Ladies and gentlemen of the jury, I'm just interested in the truth. I'm just trying to tell you what the evidence in this case is going to show. During the course of this trial, you're going to hear from detectives who give voice to the power of the Narcotics and Vice Task Force of the Jackson Police Department. During the course of this trial, you're going to hear about how the Vice and Narcotics Task Force of the Jackson Police Department betrayed our trust. They betrayed our trust by hunting and surveilling [my client] over there until they had a grand – until they believed that they had a grand opportunity to ensnare him. You're going to hear about how the vice and narcotics task force betrayed our trust when they relied on the unreliable evidence of a snitch. Then the prosecutor, they have betrayed our trust –

¶12. The State objected, and the trial court sustained the objection. Minka then asked if they could approach the bench. The trial court excused the jury, and a lengthy bench conference ensued.

¶13. The State argued that Minka was attempting to bias the jury or appeal to their sympathy, which was inappropriate. The State also argued that Minka had opened the door for the State to introduce otherwise inadmissible drug evidence into the case. Minka responded that he had no objection to any such evidence being introduced by the State, and he planned to talk to the jury about that during his opening statement. The trial court first queried Minka about the dispensation pertaining to the drug evidence. Afterward, the trial court addressed the State's objection regarding Minka's other remarks, which the record provides as follows:

THE COURT: All right. Now as far as the rest of the objection of the State, I do find that it's an improper objection -- I mean it's an improper argument. Your argument is at full throttle. It talks about fearing the powerful, and it's a completely inappropriate opening statement. You need to simply lay out what you believe the evidence will show without reference to -- hyperbole, there may be a place for that in closing argument, I'm not foreclosing that. But when you when you [sic] say that the prosecutors sitting at this table have betrayed trust, that's way out of bounds, even for closing argument. So I'm going to

5

sustain the objection. And I'm going to caution you to lay it out in a professional and calm manner, what you expect the evidence to show. You've got an opportunity to do it. And if you can't refrain from that, you're not going to go further with your opening statement. Are we clear on that?

MR. MINKA: I don't understand what I've done wrong.

THE COURT: I'm sorry?

MR. MINKA: I do not understand what I have done wrong, Judge. I do not understand what is improper. I do not understand what is wrong with saying that – what is wrong with the truth. I don't understand that, Judge. If the DA's office is not powerful then I won't say it. But they are powerful. They're powerful enough to have this man sitting over here today on charges.

THE COURT: There's a way to do it right and there's a way not to do [sic]. And you're not doing it right.

MR. MINKA: Can you instruct me –

THE COURT: Excuse me. It's really important that you not interrupt me Mr. Minka. That's really important. If you do it again I'm going to find you in contempt. Now the way opening statement works, and has in every trial I've ever had in my courtroom - - many of which [your co-counsel] has participated in, you have not yet - - you lay out in a calm professional way what you expect the evidence to show; and without going into an emotional appeal to the biases that the jury may hold. To appeal to any sense of fear that they may have of the powerful and so forth, is just not an appropriate opening statement. I don't know how further to explain it to you –

. . .

MR. MINKA: My tone is inappropriate, Judge?

THE COURT: I'm sorry?

MR. MINKA: My tone is inappropriate?

. . .

THE COURT: [Your] tone is inappropriate.

6

MR. MINKA: You want me to talk like he was talking? What tone is appropriate Judge? I'm not being fecetious [sic]. I really want to understand. Because you telling me –

THE COURT: Well, I mean, your tone right now it's like my tone. It's not - - I don't have a raised voice, I'm not making an appeal to emotion. So that's what you need to do with your tone. Lower your tone.

. . .

MR. MINKA: I do not understand, Judge. I do not understand. I don't know what rule it says that you cannot raise your voice; that you cannot speak from passion. I don't – I never seen a rule, a rule of court that has instructed attorneys that they can not speak from passion, Judge. If you can show it to me, I'll sit up there and I'll speak monotonely. But I don't believe that, that rule exists.

. . .

MR. MCCULLOUCH: Your Honor, we feel under the . . . Uniform Rules of Circuit and County Court Procedure [(URCCC)] under 10.03, that opening statement should be only what the - - either the State or the Defense believes the evidence will show. And it's our opinion, Your Honor, that defense counsel may be trying to provoke a mistrial. I'm not sure. But if we get in front of the jury with these kinds of theatrics, I think that's what's going to end up happening.

¶14. At that point, the trial court read to counsel Rules 10.03 and 3.02 of the Uniform Rules. The trial court then stated, "Now I'll let you respond, and then we'll move on."

MR. MINKA: Judge, I sincerely would like to know who have I disrespected? Who have I disrespected on the jury? Who have I disrespected at counsel opposite's table? I don't understand. I'm just trying to get an understanding.

THE COURT: All right. You've disrespected the Court. You've disrespected the attorneys sitting at counsel by saying that they've betrayed somebody. You've disrespected the Court when you came to the podium a little while ago during your opening statement, and I ruled against you, you glared at me in full view of the jury as you walked back to the podium. That's inappropriate and it's unprofessional. And I won't allow it in my courtroom. Now if you can comport yourself with Rule 3.02 and the other Rule, 10.03, I'll allow you to

7

finish your opening statement. If you can't I'll either – I'll give you an opportunity to let [co-counsel] attempt to do so in an attempt to display professionalism – which you so far have lacked in my courtroom in this setting – I'll give him that opportunity. But if you can tell me you can proceed professionally, I'll allow it. If you tell me you don't understand or you cannot proceed in accordance with the Court's ruling, I'll give [co-counsel] an opportunity to speak. And if he declines we'll just move on with testimony. So what's your response?

MR. MINKA: Judge, I just want the record to reflect you said that I glared at you. Judge, you looked me directly in my eye, and because you wanted me to know that I understand what you were saying. It was not a glare; it was not out of disrespect. And I do believe that I can continue and carry on with opening statement, Judge.

THE COURT: Very well. I'll give you one more opportunity to do that.

¶15. The jury was brought back into the courtroom. Minka then concluded his opening statement as follows:

Good afternoon again, ladies and gentlemen of the jury. Ladies and gentlemen of the jury, I wish that I could have a honest conversation with you. But I can't. So, I can't. So, I'm going to take my seat now.

¶16. The trial proceeded to the evidentiary phase, the transcript of which was not included with this record. After the close of evidence, the State presented its closing argument. Minka then delivered his closing argument, as follows:

Good morning ladies and gentlemen of the jury. How y'all doing this morning? Glad I get another chance to talk to y'all about this case. Y'all have heard from the State. Y'all heard from Mr. Spore back there. I hope I get a full opportunity to tell you about this case. In the course of these types of cases when you defending people, when you here in the courtroom, you get to learn a lot. You get to learn a lot about different, a lot of different things. You get to learn a lot about the people who you represent. It's funny that when Mr. McCulloch [sic], when he got up here, he talked about this case is not about drugs. But throughout this whole case, they have maligned Mr. Wilson as a gun-totting drug dealer. They wanted to get at your emotions. They wanted you to think that Mr. Wilson was a gun-toting drug dealer, and then stand up here

and tell you, oh, this is not about drugs and guns necessarily. But we have to ask the question: Is that necessarily true? He's not here convicted -- I mean, he's not here accused of selling drugs; no, he's not. He's here accused of possession of a weapon and being a felon. We understand that. We understand that. But what we also have to understand, is how we got here. I talked to you -- I tried to talk to you at the beginning of this case about power. I tried to talk to you about the nature of power and how power exercises itself. And our power can sometimes be reckless and abusive. And I know that you-all understand that -- because I remember going back to voir dire when we were talking to you about believing and having faith in the police officers and their ability to investigate cases and having skills and all of that kind of stuff. And we're going to talk about that. We're going to talk about the credibility of the witness that you heard from throughout this trial. But first I want to talk about this so-called drug raid, this big drug bust. And it really is a cover up, these charges against

- -

¶17. The State objected, and a bench conference ensued. The State argued Minka was arguing facts not in evidence. Minka replied he was talking about the drug raid which was in evidence, and he complained the State was interrupting his closing argument even though he did not interrupt the State's. The trial court sustained the State's objection, finding "no evidence from the witness stand concerning the assertions made by counsel."

¶18. The trial court allowed Minka to continue his closing argument. The record provides as follows:

> MR. MINKA: I just want to tell you the truth of this case ladies and gentlemen, but I'm not being allowed to tell you the truth.
>
> THE COURT: Y'all approach.
>
> MR. MINKA: But I'm not going back –
>
> THE COURT: Excuse me –
>
> MR. MINKA:  – and sit down this time –

9

THE COURT: Excuse me –

MR. MINKA  – I'm a tell you the truth –

THE COURT: Y'all approach.

¶19.    The trial court excused the jury from the courtroom, and found on the record as

follows:

> Pursuant to Rule 3.02, the Court intervened in that the defense counsel was
> inappropriately commenting on perceived inability to present an argument to
> the jury.
>
> And I want to make sure that counsel understand that, that's inappropriate.
> And the Court made an appropriate ruling–subject to appellate review – and
> that ends the matter.  And for defense counsel to stand before the jury and say
> that he's not being allowed to make an argument, is also inappropriate.

¶20.    The trial court asked whether Minka understood the inappropriate nature of the

argument and whether Minka could proceed with an appropriate closing argument.  Minka

claimed he was not being given a fair opportunity to make his closing argument and represent

his client.  He maintained that nothing he had said was improper.  He said he understood the

court's ruling, but he also understood the need to represent his client, and stated "I'm going

to represent my client."  He then said:

> The Court should do what the Court has to do.  But I have to represent that
> man.  That man's liberty is on the line, and I'm go[ing to] represent him.  And
> I[] ask this Court to be fair and just with me.

¶21.    At that point, the State moved for a mistrial, stating:

> The State feels like that the defense has, from the beginning of opening,
> attempted to throw a mistrial. Which now the State is required -- we feel like
> we're required and do make a motion for mistrial based on the defense
> attorney's failure to follow the rules of circuit and county court procedures.
> Specifically, I think, it was [Rules] 3.02 and 10.3, regarding openings.  And

we've been prejudiced in that it now appears that the State and the Court are somehow conspiring against the defense and the defense team, to get a conviction. And, Judge, this just does not follow the general rules of decorum set forth in the Rules of Circuit and County Court Procedure [sic], or the code of professional conduct. So for these reasons we would ask for a mistrial in this case.

¶22. Minka told the court he did not agree with the State's allegation; but he did not have anything to say on the State's request for a mistrial. Minka said he wanted the record to reflect that he had not been unprofessional and had not accused anyone of "conspiring against somebody." He just wanted to say to the jury "what's in the facts."

¶23. The trial court said, "So you don't oppose the State's motion for a mistrial?" Minka replied, "No, I do not."

¶24. The trial court said he would take the State's request under advisement. The court then said to Minka:

And as I weigh my options, I need you to simply say whether or not you're going to, in finishing this closing argument - - should I decide to allow you to continue - - whether you're going to stay away from any comment about this process and about the Court's rulings and about your inability to present an argument. What's your response to that? Are you going to obey an order of the Court not to do so?

¶25. Minka replied, "Yes, I'm going to advocate for my client. That's what I'm [going to] do." The trial court responded, "All right. Even if that means commenting on the ruling of the Court?" Minka said he had not commented on a direct ruling from the court, and stated: "I've commented on the obstructionist nature of the State obstructing my attempts to try to make an argument to the jury."

11

¶26.    The trial court then explained to Minka that in the event a mistrial was declared, the court could require Minka to pay for the jury panels which have to be dismissed because of Minka's unprofessional and obstreperous conduct.  The court then asked Minka once more whether he would obey the court's orders. The following exchange occurred.

> MR. MINKA: Judge, let me tell you something judge.
>
> THE COURT: I'm listening.
>
> MR. MINKA: I have said that I'm going to advocate for my client. And that's what I'm here to do; that's my job. I'm going to do my job, Judge. That's all I can tell you.  And in terms of -- Judge, I'm getting real scared here. You threatening me and I'm getting real scared.  And it's going along the lines of this ineffective assistance of counsel thing –
>
> THE COURT: All right. I don't need to hear anymore argument. Please sit down.

¶27.    Following a brief recess, the trial court granted the State's motion for a mistrial "based on counsel's willful efforts to cause that mistrial as evinced by, among other things, his behavior in court."  The trial court detailed in the order Minka's actions and found that Minka's conduct and behavior was "in direct violation of the rules of court and it successfully resulted in a mistrial, the motion for which the defense counsel did not oppose."

¶28.    The trial court ordered Minka to pay a $100 fine.  The court also ordered Minka to pay for the cost of the jury "in the total amount of $1,350.00, as his willful and improper behavior, which he refused to correct despite multiple opportunities from the court . . . to do so, resulted in the abrupt termination of the trial[.]"

**DISCUSSION**

12

¶29. "Direct criminal contempt includes words or actions before the court that tend to embarrass the court or prevent the orderly administration of justice." *Harris v. State*, 2017 WL 58190, *1 (Miss. 2017) (quoting *Mingo v. State*, 944 So. 2d 18, 32 (Miss. 2006)). In reviewing matters that involve a conviction for criminal contempt, "[t]his Court is not bound by the manifest error rule[; i]nstead, this Court proceeds ab initio to determine whether the record proves the appellant guilty of contempt beyond a reasonable doubt." *Spore v. State*, 214 So. 3d 223. 226 (Miss. 2017) (quoting *In re Smith*, 926 So. 2d 878, 885 (Miss. 2006)).

### I.    The record supports finding Minka guilty of direct criminal contempt beyond a reasonable doubt.

¶30. Minka argues the trial court erroneously found him in contempt of court for commenting on a potential sentence his client could receive, which Minka says did not occur because the "bus to Parchman" statement he made did not invoke a precise number of years. According to Minka, pursuant to *Marks v. State*, 532 So. 2d 976, 983 (Miss. 1988), only "arguments which refer to the potential sentence in a given case" are improper. Minka further contends that the "*Marks* rule" (as he terms it) should not apply to defense counsel because the rule's purpose, according to Minka, is to act as a shield for defendants in a criminal case, not as a sword against them. Minka submits that, since the State sought to convict the defendant, he logically did not violate any rule by mentioning that the State wished his client jailed.

¶31. At the outset, *Marks* does not hold or suggest that the rule against improper arguments referring to potential sentences applies only to prosecutors. *Marks* simply addressed the matter from the standpoint of the defendant because that was who complained on appeal.

13

¶32. At issue in *Marks* was whether the trial court erred in refusing to declare a mistrial due to statements made by the prosecutor in closing arguments concerning a potential manslaughter sentence in lieu of a sentence for murder.[2] *Id*. at 983. No contemporaneous objection was made by the defense following the prosecutor's statements; instead, the defense moved for a mistrial. The trial court found the prosecutor's argument was improper but declined to order a new trial on this ground. Affirming the trial court's decision on direct appeal, the *Marks* Court reiterated that "[t]he problem with arguments such as these is that they invite the jury to convict with regard to the punishment, not with regard to evidence before them, and the jury should have no concern with the quantum of punishment to be imposed." *Id*.

¶33. The concern expressed in *Marks* with such arguments is not unilateral, as Minka would have this Court hold. The general rule prohibiting argument to a nonsentencing jury regarding a defendant's potential punishment upon conviction of the crime(s) charged applies to both the prosecution and the defense. *King v. State*, 784 So. 2d 884 (Miss. 2001).

¶34. In *King*, this Court held that, during closing arguments in the sentencing phase where the death penalty is an option, both the defense and the State may argue for or against the death penalty pursuant to Mississippi Code Section 99-19-101(1). *Id*. at 889-90. This includes "mercy or sympathy" arguments from the defense, and "send a message" arguments from the State. *Id*. at 890. "Of course, neither side may ever argue these positions during the guilt phase; for a conviction or an acquittal must be based solely on law and fact." *Id*.

---

[2] The defendant in *Marks* was charged with murder, and the prosecution argued for a murder conviction during closing arguments. *Marks*, 532 So. 2d at 983.

14

¶35. This is in line with what the United States Supreme Court has held with regard to federal criminal trials. "When a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" ***Shannon v. United States***, 512 U.S. 573, 579, 114 S. Ct. 2419, 129 L. Ed 459 (1994) (quoting ***Rogers v. United States***, 422 U.S. 35, 40, 95 S. Ct. 2091, 45 L. Ed 2d 1 (1975)) (footnote omitted). "Information regarding the consequences of a verdict is therefore irrelevant to the jury's task." ***Shannon***, 512 U.S. at 579. And providing jurors with information about a defendant's potential sentence during trial "invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." ***Id***.

¶36. Here, Minka's "bus to Parchman" comment did not refer to a specific sentence his client might receive. But the comment–even if rhetorical hyperbole–was improper, particularly when considered alongside Minka's other statements and conduct.

¶37. As the State points out on appeal, Minka presented "a variety of contemptuous behavior which ultimately resulted in a mistrial." According to the record, Minka made several other inappropriate statements before the jury which included, but were not limited to, stating and insinuating that the prosecution had betrayed the jury's trust and that both the prosecution and the trial court were preventing Minka from informing the jury of the truth.

¶38. Rule 3.02, which governs conduct of attorneys in the courtroom, provides in part:

> Attorneys should manifest an attitude of professional respect toward the judge, the opposing attorney, witnesses, defendants, jurors, and others in the courtroom. In the courtroom, attorneys should not engage in behavior or tactics

15

purposely calculated to irritate or annoy the opposing attorney and shall address the court, not the opposing attorney, on all matters relating to the case.

. . .

In opening statements, and in closing arguments, the attorneys may not attack the opposing attorney. . . . In the argument to the jury, the attorneys will be required to keep within proper bounds, and any attempt to inject improper matter may be stopped by the court without the necessity of an objection. . . .

. . .

*It is the duty of the court to enforce this rule of its own motion and without objection being made*, but the court's failure to do so, where there is no objection made, will not constitute a ground for exception.

URCCC 3.02. (emphasis added).

¶39. Attorneys "are not allowed to employ tactics which are 'inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury.'" **Flowers v. State**, 842 So. 2d 531, 553 (Miss. 2003) (quoting **Sheppard v. State**, 777 So. 2d 659, 661 (Miss. 2001)). Minka's declaration to the jury during opening statements that the prosecution had betrayed its trust falls in that category. And the trial court properly admonished Minka for it.

¶40. The record illustrates that Minka, however, disregarded the court's admonition and suggested to the jury later during opening statements and again during closing arguments that he was not being allowed to tell them the truth. Contrary to what Minka claimed to the trial court and attempts to claim here, the record–as the State points out–does indeed demonstrate that Minka intended to insinuate to the jury that both the trial court and the prosecution were preventing him from telling them the truth.

16

¶41. This not only was prejudicial to the State and its case, but it was prejudicial to the court itself. Suggesting to the jury that the court was preventing Minka from providing the "truth" of the matter struck directly at the impartiality, equality, and fairness of justice expected and required to be rendered by our courts. Minka willfully compromised this basic premise with his baseless statements, and the trial court rightfully granted the State's request for a mistrial because of them.

¶42. As to the other contemptuous conduct the trial court found Minka engaged in, both the transcripts and the audio recording included with this record fully support the court's findings. The record demonstrates beyond a reasonable doubt that Minka was guilty of direct criminal contempt, and that his contemptuous conduct resulted in a mistrial in the underlying criminal matter.

¶43. This issue is without merit.

**II. The trial court did not abuse its discretion in assessing monetary sanctions against Minka.**

¶44. Minka contends that, even if this Court upholds the trial court's contempt order, the amount of money sanctioned should not be affirmed. Minka submits the trial court charged him for twenty-six prospective jurors who never sat on the case, which went to mistrial, improperly increasing the sanction by $650 for the whole venire. Minka argues that nothing he allegedly did harmed those prospective jurors who did not sit on the case. Minka further contends that there is no proof in the record as to why this higher cost should have been assessed.

17

¶45. We disagree. The trial court detailed in its order how it calculated the monetary sanction for jury costs and the authority by which it proceeded. The court ordered Minka to pay $1,350 for the jury cost ($25 per juror for forty jurors who participated in voir dire on November 18, and $25 per juror for the fourteen petit jurors who appeared the next day for trial on November 19). Twenty-five dollars is the statutory rate pursuant to Mississippi Code Section 25-7-61. *See* Miss. Code Ann.§ 25-7-61 (Rev. 2006).

¶46. The same type sanction was upheld recently in ***Harris***, 2017 WL 58190 (assessing $1,200 for the cost of the jury), and previously in ***Crosby v. State***, 760 So. 2d 725 (Miss. 2000) (assessing $750 for jury cost–$25 per juror for thirty jurors), pursuant to Uniform Rule 3.13. This rule provides: "The court may assess all costs, including fees and mileage of jurors who have been required to be present for the trial, against whichever party litigant or attorney it deems appropriate, for failure of an attorney to try the case . . . ." URCCC 3.13. The trial court in its discretion did not assess Minka the cost for mileage.

¶47. This issue too is without merit.

## CONCLUSION

¶48. For these reasons, we affirm the trial court's contempt and sanctions order against Minka.

¶49. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, KING, COLEMAN, MAXWELL AND CHAMBERLIN, JJ., CONCUR.**