# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-01193-SCT

*A. RANDALL HARRIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/04/2015 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAVID NEIL McCARTY |
| | SAGE EGGER HARLESS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ABBIE EASON KOONCE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 01/05/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     On the morning of his client's trial, defense attorney Randall Harris tried to withdraw as counsel.  When the judge declined his request, Harris told the judge he was "wrong" for doing so, and he "was not going to participate" in the trial.  Harris's refusal to abide by the court's order forced a continuance.  And the judge held him in direct criminal contempt.

¶2. "Direct criminal contempt includes words or actions before the court that tend to embarrass the court or prevent the orderly administration of justice."[1] We find Harris's actions clearly fell within this category. Thus, we affirm the judgment finding Harris guilty of direct criminal contempt and ordering Harris to pay a $100 fine and $1,200 for the cost of the jury venire.

## Background Facts and Procedural History

### I. This Court's En Banc Order

¶3. In early 2015, Hinds County Circuit Court Judge Jeff Weill, Sr., ordered the cases of more than fifty indigent criminal defendants be reassigned from Alison Kelly with the Hinds County Public Defenders Office (HCPDO) to appointed counsel. One of those cases was Cameron Travelsted's. Randall Harris was appointed to take over his defense.

¶4. The HCPDO sought this Court's intervention. And on May 21, 2015, we entered an En Banc Order lifting Judge Weill's blanket ban against Kelly. *In re: Office of the Hinds Cty. Pub. Defender*, 2015-M-00303-SCT, *En Banc Order* (May 21, 2015). But this Court denied the HCPDO's request to automatically reassign all fifty-five cases back to Kelly because those "cases [were] in various stages of development, and the best interest of justice may be served by leaving them as they are." *Id.* Instead, we permitted the HCPDO "to inform each of its previous clients in the fifty-five cases . . . that they may choose to continue with private counsel Judge Weill has appointed to represent them, or they may choose to have the HCPDO reassume their representation." *Id.*

---

[1] *Mingo v. State*, 944 So. 2d 18, 32 (Miss. 2006) (citing *Jordan v. State*, 216 Miss. 542, 62 So. 2d 886, 888 (1953)).

¶5.    Soon after the En Banc Order, the HCPDO met with Travelsted, who elected to stay with his appointed counsel, Harris.  In June, the HCPDO informed Judge Weill about Travelsted's decision.  And Harris assured Judge Weill he was prepared to go forward with Travelsted's trial set for Monday, July 13, 2015.

## II.    Harris's Motion to Withdraw

¶6.    But the Friday before trial, on July 10, Harris filed a motion to withdraw.  In his motion, Harris asserted that the Hinds County Board of Supervisors (Board) would not pay for private counsel in cases in which the criminal defendant had elected to stay with appointed counsel instead of going back to the HCPDO.  So if he was not permitted to withdraw, he would be put in the difficult position of having to sue the Board for payment.

¶7.    Judge Weill heard Harris's motion Monday morning, before the trial began.  Public defender Alison Kelly also was present.  On July 2, she had filed a motion to appear in Travelsted's case.

¶8.    When asked to present his motion, Harris told the court:

> I am here today to ask the Court to allow me to withdraw from this case, because it's become clear to me that the board of supervisors—who pays the court-appointed attorney's fees—they have made clear that they're not going to pay me for services that I have rendered and will continue to be compelled to render in the event that you don't allow me to withdraw.

Harris also told Judge Weill that Travelsted "has now opted to go back to the public defender's officer."  And "[t]he public defender has accepted that responsibility" and "is desirous of representing him."  So as Harris saw it, "by allowing [him] to withdraw, that settles the whole compensation issue with the board of supervisors."

3

¶9. Judge Weill then asked Harris about the email the HCPDO had sent the month before saying it had met with Travelsted and Harris, and that Harris would represent Travelsted at trial. Harris acknowledged he too had received that email and had been prepared at that time to go to trial on July 13. "But that was before it was made known to me I wasn't going to get paid."[2]

¶10. Judge Weill denied Harris's motion from the bench, stating:

> After considering the argument of the parties, the Court finds the motion to withdraw is not well-taken [and] should be denied. It's my belief that the order appointing Mr. Harris to represent Mr. Travelsted is valid pursuant to the Mississippi Supreme Court's May 21, 2015 En Banc Order. Mr. Travelsted notified this Court on June 5, 2015, that he elected for Mr. Harris to represent him going forward. Accordingly, this Court then set forth deadlines and specially scheduled the trial on this matter. The Court also put the defendant on notice that a last-minute change in counsel would not warrant a continuance in this matter. It appears as though Mr. Travelsted's attempt to now have Ms. Kelly represent him is an attempt to secure continuance of this trial. Accordingly, I will deny the motion to withdraw, and this matter will proceed to trial as scheduled at 1:00 pm today.

¶11. At this point, with Harris still Travelsted's attorney of record, Kelly asked to be excused. She explained the *ore tenus* motion to continue she had planned to make was now moot.

### III. Trial Court's Finding of Direct Criminal Contempt

¶12. After Kelly left, Judge Weill asked Harris if he had any more motions before trial. Harris responded:

> *Judge, I'm not participating in this trial.* You know, I'm glad that the [Supreme] Court believes your ruling is correct. The Supreme Court never

---

[2] The State also was asked if it wanted to weigh in. The State said nothing, except that it was prepared to go forward that morning with Travelsted's trial.

said that in the event that his case comes up like this, if he opts to do this, the Board's going to pay. It just gave him the option of doing that. The Board has told you they're not paying. The Board may or may not, you know, tell the Supreme Court. I mean, until the Supreme Court mandates him to pay, I don't see it happening.

*So I'm not participating here. Even though you believe you're right, I believe that you're wrong. And I'm just not going to participate.*

(Emphasis added.) Judge Weill then asked, "So you're refusing to participate in the trial?"

And Harris replied, "I'm refusing to participate under these circumstances. Yes, sir."

¶13. Based on Harris's defiance of his order, Judge Weill found him in direct criminal contempt. With Travelsted's trial unable to proceed that afternoon as scheduled, Judge Weill set a status conference for the next week. He directed Harris to appear at that hearing "because one of the other matters will be sentencing on the contempt issue." At Harris's request, Judge Weill said he would also hear any arguments Harris may have for why his criminal-contempt conviction should be set aside.

¶14. At the status conference—after giving Harris an opportunity to plead his case—Judge Weill entered an order, confirming Harris had been guilty of direct criminal contempt. The order also directed Harris to pay a $100 fine and a $1,200 assessment for the cost of the jury that had shown up for voir dire on July 13. *See* URCCC 3.13.

### IV. Harris's Petition for Extraordinary Writ

¶15. In response to the order, Harris filed a Petition for Writ of Extraordinary Relief, which we deemed a notice of appeal. On appeal, Harris raises three issues:

I.     The trial court violated his right to due process.

5

II.     He lacked the legal capacity to represent Travelsted at trial.

III.    The $1,200 sanction is void because the civil settlement rule can never apply to criminal matters, and because the venire was not wasted.

**Discussion**

**I.     The record supports finding Harris guilty of direct criminal contempt beyond a reasonable doubt.**

¶16.    Before addressing Harris's specific claims on appeal, we must first determine if the record supports finding Harris guilty of contempt beyond a reasonable doubt. "Generally speaking, contempt matters are committed to the substantial discretion of the trial court" and are reviewed only for manifest error. *Mingo v. State*, 944 So. 2d 18, 32 (Miss. 2006) (quoting *In re Williamson*, 838 So. 2d 226, 237 (Miss. 2002)). But when the contempt is criminal, we "proceed[s] ab initio and will determine on the record whether the person in contempt is guilty of contempt beyond a reasonable doubt." *Id.*

¶17.    Whether the contempt is civil or criminal hinges on the purpose of the contempt finding. "If the primary purpose of the contempt order is to enforce the rights of private party litigants or enforce compliance with a court order, then the contempt is civil." *Id.* But if the purpose is "to punish the contemnor for disobedience of a court order," then the contempt is criminal. *Id.* Here, the purpose of the contempt finding was to punish Harris for disobeying the trial court's order to continue representing Travelsted. It was not to enforce compliance, because Harris already had announced he would not comply. So the contempt was clearly criminal, prompting this Court's heightened review.

6

¶18. The criminal contempt was also *direct*. Direct contempt occurs right in front of the court. *Neely v. State*, 98 Miss. 816, 54 So. 315 (1911). "It may consist of an open insult, in the presence of the court, to the person of the presiding judge, or a resistance to or defiance of the power and authority of the court." *Id.* And it "includes words or actions before the court that tend to embarrass the court or prevent the orderly administration of justice." *Mingo*, 944 So. 2d at 32 (citing *Jordan v. State*, 216 Miss. 542, 62 So. 2d 886, 888 (1953)).

¶19. In *Mingo*, a criminal defense attorney acted similarly to Harris. One afternoon before trial was to recommence, he announced to the judge that he was unwilling to continue to represent his client and intended to withdraw. *Id.* The trial judge found the attorney's motion to withdraw was not well-taken. Still, the attorney refuse to proceed. *Id.* at 33. On appeal, this Court found "[d]efense counsel's refusal to continue with trial clearly constituted an action tending to prevent the orderly administration of justice." *Id.* So "[t]he trial judge's decision to hold counsel in direct criminal contempt, while serious, was within his discretion." *Id.*

¶20. We hold the same here. Like the attorney in *Mingo*, Harris defied the trial court's authority when he refused to represent Travelsted at his trial scheduled that day, despite not being granted permission to withdraw. And his actions "prevent[ed] the orderly administration of justice" as it delayed Travelsted's trial. Thus, we find the record supports finding Harris guilty of direct criminal contempt beyond a reasonable doubt.

## II. Harris's appellate arguments are either procedurally barred or fail on the merits.

### A. Harris's due-process rights were not violated.

¶21. On appeal, Harris argues the trial court violated his due-process rights by not providing him notice of the charges against him and potential sentence and by not recusing himself. "In the case of *constructive* criminal contempt, we have held that defendants must be provided with procedural due process safeguards, including a specification of charges, notice, and a hearing." *In re Smith*, 926 So. 2d 878, 888 (Miss. 2006) (emphasis added). We also have found that "in cases of indirect or constructive criminal contempt, where the trial judge has substantial personal involvement in the prosecution, the accused contemptor must be tried by another judge." *Corr v. State*, 97 So. 3d 1211, 1214 (Miss. 2012) (quoting *Graves v. State*, 66 So. 3d 148, 154 (Miss. 2011)). So "[i]f [Harris's] actions actually constituted constructive criminal contempt, [his] due process rights would guarantee [him] more than the immediate sentence [he] received, including a different judge to hear the contempt proceedings." *In re Smith*, 926 So. 2d at 888.

¶22. But contrary to Harris's assertion on appeal, "this is not remotely close to being a case of constructive contempt." *Id.* "[C]onstructive contempt involves actions which are committed *outside the presence of the court*." *Corr*, 97 So. 3d at 1214 (emphasis in original). By contrast, "direct criminal contempt involves words spoken or actions committed in the presence of the court[.]" *Id.* Here, the words Harris spoke and the actions he committed *in the presence of the court* led to his punishment. So Harris's actions amounted to *direct* criminal contempt, not constructive.

¶23. "Punishment for direct contempt may be meted out instantly *by the judge in whose presence* the offensive conduct was committed." *Id.* (emphasis in original). This is because

8

"[a] direct criminal contempt . . . takes place in the very presence of the judge *making all the elements of the offense personal knowledge*." **Id.** So like the attorney in **In re Smith**, because the conduct at issue occurred in front of the trial judge, Harris "was not due more than the hearing [he] received." **In re Smith**, 926 So. 2d at 888. So he was "not denied any due process protections." **Id.**

B. *Harris did not lack the "legal capacity" to represent Travelsted.*

¶24. Harris also argues he lacked the "legal capacity" to represent Travelsted. Consequently, he asserts, he should not have been found in contempt for refusing to continue with the representation. But Harris waived this argument by not arguing it before the trial court. **Gale v. Thomas**, 759 So. 2d 1150, 1159 (Miss. 1999) (citing **Davis v. State**, 684 So. 2d 643, 658 (Miss. 1996); **Cole v. State**, 525 So. 2d 365, 369 (Miss. 1987)) ("As this Court has stated, time and again, an issue not raised before the lower court is deemed waived and is procedurally barred."). Harris never asserted, when arguing his motion to withdraw, he could not represent Travelstead due to lack of "legal capacity." Instead, Harris's sole argument was that he *should not* have to represent Travelsted, given the Board's stance on paying for his services.

¶25. But even had he preserved this claim, Harris cannot support his argument that the law somehow mandated he cease representing Travelsted, despite not being granted the court's permission to do so. Harris leans heavily on the Mississippi Rules of Professional Conduct to assert that—as soon as Travelsted, less than two weeks before trial, reversed his decision to stick with Harris as his attorney—Harris "no longer had any legal or factual authority to

9

represent Mr. Travelsted at trial." Harris partially quotes Rule 1.16(a)(3)—"a lawyer shall not represent a client, or where representation has commenced, shall withdraw from the representation of a client if . . . the lawyer is discharged." Miss. R. Prof'l Conduct 1.16(a)(3). But Harris leaves out an important part of that rule. Rule 1.13(a)(3) begins with an important qualification—"Except as stated in paragraph (c) . . . ." And paragraph (c) clearly states, "*When ordered to do so by a tribunal*, a lawyer shall continue representation *notwithstanding good cause for terminating the representation*." Miss. R. Prof'l Conduct 1.16(c) (emphasis added). So the Rules of Professional Conduct did not authorize Harris to withdraw despite being ordered not to. They actually required him to continue the representation.

¶26. Harris also relies on this Court's En Banc Order. Because the En Banc Order gave Travelsted the option of keeping Harris as his counsel or returning to the HCPDO, Harris contends that he would be in violation of the En Banc Order if he continued to represent Travelsted once Travelsted said he wanted to switch back to the HCPDO. But as part of his ruling on the motion to withdraw, Judge Weill expressly found Harris's continued representation complied with the En Banc Order. And Harris could not ignore this ruling simply because, in his own words, "Even though you believe you're right, I believe that you're wrong."

¶27. Under Uniform Rule of Circuit and County Court Practice 1.13, "When an attorney makes an appearance for any party in a case, that attorney *will not be allowed to withdraw* as attorney for the party *without the permission of the court*." (Emphasis added.) And

10

without the court's permission, an attorney must continue the representation "*notwithstanding good cause for terminating the representation*." Miss. R. Prof'l Conduct 1.16(c) (emphasis added). So even if Harris believed he had good cause to terminate his representation of Travelsted based on the circumstances, he still had to obtain the court's permission in order to withdraw. And once denied permission, he could not simply ignore the judge's order because he believed the judge was wrong. *See **Mingo***, 944 So. 2d at 33 (affirming direct criminal-contempt conviction of an attorney who had told the trial court its denial of counsel's motion to withdraw was a mistake and that, ethically, counsel could not continue the representation); Miss. R. Prof'l Conduct 1.16(c).

### C. The assessment of $1,200 for cost of the jury venire is valid.

¶28. Finally, Harris challenges the trial court's reliance on Uniform Rule of Circuit and County Court Practice 3.13 to assess Harris $1,200—the cost of the jury.

¶29. Under Rule 3.13, "The court may assess all costs, including fees and mileage of jurors who have been required to be present for the trial, against whichever party litigant or attorney it deems appropriate, for failure of an attorney to try the case[.]" URCCC 3.13.[3] Harris argues this rule applies only to attorneys who fail to try *civil* cases, not criminal ones. But nothing in the rule itself or this Court's interpretation precludes its application to criminal trials. In fact, in ***Crosby v. State***, this Court relied on Rule 3.13 when it affirmed the trial judge's assessment of the cost of the jury against a criminal defense attorney who

---

[3] Rule 3.13 also gives the court discretionary authority to assess costs "for failure to notify the court of settlement of a case before 5:00 P.M. on the day before the trial." URCCC 3.13.

11

"deliberately set out to delay [his client's criminal] trial after his motions for continuance had been denied." **Crosby v. State**, 760 So. 2d 725, 728 (Miss. 2000). Because "[Rule] 3.13 provides the court with authority to assess an attorney costs, including fees and mileage of jurors, for failure of an attorney to try the case," this Court found "that the trial judge did not abuse his discretion . . . in assessing the cost of the jurors' pay for the day of jury duty." **Id.** Likewise, Rule 3.13 likewise provided the trial court authority to assess Harris the cost of the jury, based on his finding that, because of "Harris's refusal to comply with the rulings of this Court, the . . . cause of action [against Travelsted] could not proceed to trial as scheduled[.]"

¶30.    Alternatively, Harris argues the $1,200 assessment "was wrong because the venire was actually used in other jury trials." But the only evidence Harris provides to support this contention is an affidavit attached to his Notice of Filing, which he filed *after* his notice of appeal. Harris never presented this affidavit to the trial court during the July 22 hearing, during which—as Harris had been notified—evidence related to his sentence was to be presented. Neither did Harris attached this affidavit to a motion to alter the contempt order. *See* M.R.C.P. 59(e). Instead, Harris asks this Court on appeal to make an evidentiary finding that the jury venire that showed up on July 13, 2015, "was not wasted." Because Harris asks us to hold the trial court in error based on an argument and evidence not presented below, we find this argument to be procedurally barred. *See* **Hardy v. Brock**, 826 So. 2d 71, 76 (Miss. 2002) ("Mississippi appellate courts may not consider information that is outside of the record."); **Gale**, 759 So. 2d at 1159 (deeming arguments not raised before the trial court to be waived and procedurally barred).

**Conclusion**

¶31.    Because the record supports finding beyond a reasonable doubt that Harris was in direct criminal contempt when he refused to represent Travelsted at trial after his motion to withdraw was denied, and because Rule 3.13 authorized the trial court to assess Harris the cost of the jury that had shown up for the Travelsted's trial, we affirm the conviction of direct criminal contempt and $100 fine, as well as the $1,200 assessment for the cost of the jury.

¶32.    **AFFIRMED.**

**DICKINSON AND RANDOLPH, P.JJ., KITCHENS, KING, COLEMAN AND BEAM, JJ., CONCUR. WALLER, C.J., AND CHAMBERLIN, J., NOT PARTICIPATING.**