# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-CP-00291-SCT

*IN RE: M. ZACHARY JEX*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/15/2023 |
| TRIAL JUDGE: | HON. TOMIKA HARRIS IRVING |
| TRIAL COURT ATTORNEYS: | LARRY GUS BAKER |
| | PATRICK EARL BEASLEY |
| | PRICE DARBY HENLEY |
| | DANIELLA MARIE SHORTER |
| | MICHAEL ZACHARY JEX |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | M. ZACHARY JEX (PRO SE) |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 04/17/2025 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     As part of negotiating a plea bargain for his client, Attorney Zachary Jex committed to paying the jury costs associated with the trial in the Circuit Court of Claiborne County. On appeal, Attorney Jex now seeks to retreat from his commitment. The circuit court was legally authorized to impose these costs on Attorney Jex.  The record confirms that he voluntarily agreed to pay them.  We affirm the circuit court's Order Requiring Defendant's Attorney to Pay Costs of Jurors Appearing for Duty on September 12–13, 2023.

## FACTS

¶2.     Attorney Jex was hired by Jerrell Davis to defend him on charges of first-degree murder and aggravated assault.  Davis's first trial was held in January 2022 and resulted in

a mistrial. Davis's second trial was set to be held in the Claiborne County Circuit Court on September 12, 2023.

¶3. Prior to the first trial, Jex attempted to reach a plea agreement with the prosecution. He suggested Davis would plead guilty to "2 charges of manslaughter to run concurrently, 15-year sentence, 22 months to serve (the length of time he'[d] been incarcerated) with credit for time served, the remainder served on post-release supervision." In exchange, the prosecution would drop the aggravated assault charge. The prosecution rejected this plea offer.

¶4. The second trial went forward, and on September 12, 2023, jury selection began. Because the courtroom's air conditioning failed that day, at the request of Attorney Jex, the trial was continued until the following day at the Claiborne County Emergency Management Facility.

¶5. The following morning, Attorney Noah Drake, also representing Davis with Attorney Jex, approached the prosecution and suggested a plea bargain. Attorney Jex incorrectly refers to this offer as "the same plea deal Counsel had offered since 2021." Both agreements included dropping the aggravated assault charge and pleading guilty to two counts of manslaughter, but the December 2021 offer included only time served, whereas the 2023 offer "sought 15 years with 10 to serve[.]"

¶6. The prosecution countered the new offer and "sought 20 years with 15 to serve." Davis accepted this counteroffer.

¶7.     Davis, Attorney Jex, Attorney Drake, District Attorney Daniella Shorter, and Assistant

District Attorney Larry Baker then proceeded to an in-chambers plea hearing with Judge

Tomika Irving.  At the beginning of the plea hearing, the following exchange occurred:

BY HONORABLE JUDGE IRVING: All right. So what is going on?

BY MR. JEX: Your Honor, this morning before trial we entered into a, sort of, informal settlement negotiation for a plea and I think we got to a number. Mr. Davis is willing to plea to two counts of manslaughter under the imperfect self-defense, carries the same as the normal manslaughter statute, drop the aggravated assault and five suspended, 15 to serve.

BY HONORABLE JUDGE IRVING: Is that correct, Ms. Shorter?

BY MS. SHORTER: Yes, ma'am.

BY HONORABLE JUDGE IRVING: Is this negotiations that -- I guess my question is, had this offer been made previously?

BY MR. JEX: No, Your Honor.

BY HONORABLE JUDGE IRVING: And this is the first time this offer has been made?

BY MR. JEX: Yes, Your Honor.

BY MS. SHORTER: Actually, defense attorney Mr. Jex, came and asked if we would consider it.

BY MR. JEX: I have offered around this number before, Your Honor.

BY MS. SHORTER: I forgot that the jury tax would be to the defendant, not to the State.

BY MR. JEX: What is that? How much is that? How much does that cost?

BY HONORABLE JUDGE IRVING: We are here for a jury trial and this is basically my policy that when we are here for a jury trial and we have a jury sitting out there, there is no plea with the exception that somebody has to pay for that.

3

BY MR. JEX: Right.

BY HONORABLY JUDGE IRVING: Because this could have been done beforehand.

BY MR. JEX: We were not offered a plea, Your Honor.

BY HONORABLE JUDGE IRVING: So I have no problem accepting a plea but we have the cost of the jury.

BY MR. JEX: Right. I mean, Your Honor, I can't remember who I said it to but I suggested that we -- I think it was Mr. Larry here -- that we would do it before the trial. And I was told that wasn't on the table. So then when we get -- we offer it again today, so I'm not sure how that would be taxed on the defendant. Although, I will do what ever Your Honor wants.

BY HONORABLE JUDGE IRVING: That's the problem I have because –

BY MR. JEX: I think it should be taxed to the State of Mississippi.

BY HONORABLE JUDGE IRVING: -- we have been wasting time. If this wasn't held, that could have been made.

BY MS. SHORTER: If that's the case, then it's off the table, because we aren't going to pay for the jury cost.

BY MR. JEX: What is the jury cost, Your Honor?

BY HONORABLE JUDGE IRVING: I don't know. I will have to ask the clerk. I mean, we've got 66 people.

BY MR. JEX: Are we talking about thousands of dollars or are we talking about 25 a person?

BY HONORABLE JUDGE IRVING: No, it's 66 people. I don't know how much it is per person but now they have been here for two days, so whatever that is. I would have to ask the clerk to give a cost. I don't know what that number will be.

BY MR. JEX: *Your Honor, I will pay whatever the jury costs if the deal is going to come off the table.* I am just putting it on record that we were not offered this before today.

BY HONORABLE JUDGE IRVING: Ask Ms. West. She is probably going to do what I need.

BY MR. DRAKE: She's calling.

BY COURT ADMINISTRATOR: She said that because they are not seated the price of it is 25 dollars a day. If they were seated, it would have been 30 dollars a day. So right now, it's 25 dollars.

BY HONORABLE JUDGE IRVING: So it's 25 dollars -

BY MR. JEX: Fifty times 66, 2800 bucks.

BY MS. SHORTER: It's 3300.

BY HONORABLE JUDGE IRVING: That is the amount we are looking at.

BY MR. JEX: *Your Honor, you tell me what to pay and I'll pay it. I don't think it's fair but I will pay it.*

BY HONORABLE JUDGE IRVING: So we are going to take the plea. Are we prepared to do that now?

BY MR. JEX: Yes, Your Honor.

Following this exchange, the plea hearing continued normally, and Judge Irving accepted Davis's guilty plea.

¶8. Two days after the plea hearing, on September 15, 2023, the trial court entered its Order Requiring Defendant's Attorney to Pay Costs of Jurors Appearing for Duty on September 12–13, 2023. The order required Attorney Jex to

> reimburse Claiborne County Board of Supervisors the amount of Four Thousand One Hundred Forty-One Dollars and 00/100 ($4,141.00), for the appearance of jurors for the trial of Jerrell Davis, being cause number CR2021-04, in the Circuit Court of Claiborne County, Mississippi, on September 12, 2023 and September 13, 2023, when said jurors did not perform their duty due to Defendant's desire to plead guilty.

The amount owed by Attorney Jex was determined by calculating the jurors' appearance cost (twenty-five dollars per juror per day), plus their mileage allowance.

¶9.     On October 25, 2023, Attorney Jex contacted the court to discuss the costs assessed to him.  The trial court instructed him any such discussion must be had on the record, and a hearing was scheduled for November 6.  At that hearing, Attorney Jex argued that he should not be required to pay the costs.  The court deemed this argument an *ore tenus* motion to reconsider its previous order and denied the motion.

¶10.    Following the submission of a written version of Attorney Jex's motion to reconsider and a response from the state, the trial court issued its Order Denying M. Zachary Jex's Motion to Reconsider the Order Requiring Defendant's Attorney to Pay Costs of Jurors Appearing for Duty on September 12–13, 2023.  Attorney Jex now appeals to this Court from that order.

## STANDARD OF REVIEW

¶11.    "The grant or denial of a motion for reconsideration is reviewed under an abuse-of-discretion standard."  *State v. Walgreen Co.*, 250 So. 3d 465, 477 (Miss. 2018) (citing *City of Jackson v. Internal Engine Parts Grp., Inc.*, 903 So. 2d 60, 66 (Miss. 2005)). We will not disturb the findings of a circuit court "unless they are manifestly wrong, clearly erroneous, or an erroneous legal standard was applied."  *City of Jackson v. Powell*, 917 So. 2d 59, 68 (Miss. 2005) (citing *City of Jackson v. Perry*, 764 So. 2d 373, 376 (Miss. 2000)). A trial court is granted discretion to assess jury costs pursuant to Rule 3.13 of the Uniform

Civil Rules of Circuit and County Court Practice and that discretion is afforded deference. UCRCCC 3.13.

## ANALYSIS

¶12.    Attorney Jex was admitted to the Mississippi Bar in 2009.  He remains a member today.  As such, he is subject to the Mississippi Rules of Professional Conduct.  Major themes of the rules of professional conduct, which govern ethical behavior of attorneys in Mississippi, include honesty, truthfulness, and diligence in following through with commitments.  *See, e.g.*, M.R.P.C. Preamble ("A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials."); M.R.P.C. 3.3 (a)(1) ("A lawyer shall not knowingly: . . . make a false statement of material fact or law to a tribunal[.]"); M.R.P.C. 4.1(a) ("In the course of representing a client a lawyer shall not knowingly: . . . make a false statement of material fact or law to a third person[.]"); M.R.P.C. 8.4(c) ("It is professional misconduct for a lawyer to: . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]").  The transcript of the plea hearing provides indisputable evidence that Attorney Jex made a clear commitment to the trial court that he would pay for the jury costs.

¶13.    Furthermore, Judge Irving was well within her authority to assign jury costs to a party attorney.  Rule 3.13 of the Uniform Civil Rules of Circuit and County Court provides:

> The court may assess all costs, including fees and mileage of jurors who have been required to be present for the trial, against whichever party litigant or attorney it deems appropriate, for failure of an attorney to try the case or for failure to notify the court of settlement of a case before 5:00 P.M. on the day before the trial.

UCRCCC 3.13. This Court has clear precedent stating that the rule applies to both criminal and civil cases. *Harris v. State*, 224 So. 3d 76, 82 (Miss. 2017).

¶14. "[N]othing in [Rule 3.13] . . . or this Court's interpretation precludes its application to criminal trials. . . . [T]his Court relied on Rule 3.13 when it affirmed the trial judge's assessment of the cost of the jury against a criminal defense attorney who 'deliberately set out to delay [his client's criminal] trial after his motions for continuance had been denied.'" *Id.* at 82-83 (sixth alteration in original) (quoting *Crosby v. State*, 760 So. 2d 725, 728 (Miss. 2000)).

¶15. The trial judge had the authority under Rule 3.13 to assign the costs to Attorney Jex when he promised to pay them. The Rules of Professional Conduct require that he follow through on his promise.

¶16. Attorney Jex argues the trial court erred by ordering him to pay jury costs for three reasons:

(1) Mr. Jex's agreement to pay the jury cost was made under duress and therefore is unenforceable and may not be held against him.

(2) Judge Irving misapplied UCCCR 3.13 and therefore has no legal or moral authority to order Mr. Jex to pay the cost of the jury.

(3) Claiborne County District Attorney Daniella Shorter's threat to withdraw the State of Mississippi's plea offer unless M. Zachary Jex agreed to personally pay the cost of the jury in *State of Mississippi v. Jerrell Davis* is prosecutorial misconduct and creates a "pay to play" situation.

Attorney Jex's arguments are insufficient to overturn the sound judgment of the Claiborne County Circuit Court.

¶17.    Attorney Jex cites no authority in his argument that he only volunteered to pay the jury costs because he was under duress.  He merely quotes the transcript and argues the agreement is "unenforceable and not binding against him due to the surprise nature of Ms. Shorter's demand[.]"  For duress to be present:

> A dominant party must conduct himself or herself in a manner that overrides the volition of the weaker party.  To this end, a deprivation of a party's free exercise of his or her own will constitutes duress.  But duress cannot be established with mere insistence by one party of a legal right to which the other party yields.  Likewise, duress cannot be claimed when a party makes a lawful demand or exercises or threatens to exercise a legal right.

*Ladner v. O'Neill (In re Est. Of Davis)*, 42 So. 3d 520, 525 (Miss. 2010) (citations omitted) (citing *Duckworth v. Allis-Chalmers Mfg. Co.*, 247 Miss. 198, 150 So. 2d 163, 165 (1963)).  The "surprise" decision of whether to pay the jury costs does not rise to the legal level of duress.  This argument is without merit.

¶18.    Attorney Jex argues that Rule 3.13 is designed to punish attorneys who manipulate the system with delay tactics and, therefore, inapplicable to him.  Attorney Jex is not being punished.  He volunteered to pay the jury costs.  The clear language of the rule states that the court may assess jury costs to an attorney who fails "to notify the court of settlement of a case before 5:00 P.M. on the day before the trial."  UCRCCC 3.13.  This was plainly the situation at trial, and Judge Irving acted well within her authority without misapplying Rule 3.13.

¶19.    District Attorney Shorter's decision that the State would not pay the jury costs does not represent prosecutorial misconduct nor does it create a "pay to play" situation.  Plea bargains exist to facilitate judicial efficiency, to reduce costs for the state and defense, and to prevent the courts from being inundated with an insurmountable number of cases.  Costs

9

are an inherent consideration of plea bargains. It is not only reasonable but expected for a prosecutor and a trial judge negotiating a plea bargain to consider the costs to the judicial system. As such, Judge Irving was correctly implementing both the letter and the spirit of the law when she required the jury costs to be paid by one of the bargaining sides. And District Attorney Shorter was responsibly protecting the interests of the State when she refused to pay the jury costs.

## CONCLUSION

¶20. For the foregoing reasons, the order of the Claiborne County Circuit Court is affirmed.

¶21. **AFFIRMED.**

**MAXWELL, ISHEE AND BRANNING, JJ., CONCUR. CHAMBERLIN, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY MAXWELL, ISHEE, GRIFFIS AND BRANNING, JJ. SULLIVAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING AND COLEMAN, P.JJ.**

**CHAMBERLIN, JUSTICE, SPECIALLY CONCURRING:**

¶22. First and foremost, I agree with the majority that the trial judge had the right to take each and every action at issue in this case. I further agree that Attorney Jex agreed to pay court costs and that the policy of the court regarding payment of court costs after the start of trial does not constitute legal duress nor does the refusal of the prosecutor to agree to the state paying court costs constitute prosecutorial misconduct.

¶23. I write separately to express concerns about the policy of the trial court as it relates to the facts of this case, however. Not to be misunderstood, I do not take issue with the right to implement the policy itself, although it is one-sided. Someone is always going to pay court costs in a criminal case. In indigent cases, it is the state. In non-indigent circumstances, in

10

which a timely plea occurs most often, although the court certainly has the authority to assign the costs, the state pays. As a matter of fact, the defendant cannot be ordered to pay unless he is convicted. *See* MRCrP 26.6(a). The policy that someone has to pay when a plea agreement is reached after a jury is called in means the defendant has to pay absent a rare agreement of the state to pay. I assume the policy is in place to stop defendants from dragging their feet until they have to look eye-to-eye with the jurors who will determine their fate. There is certainly nothing sinister about the policy. On the contrary, it provides some incentive to resolve the case expediently.

¶24. But the facts of this case, as contained in the record, exemplify my concern. The significant facts are:

- Prior to the first trial of Davis, the state made no plea offer.

- Prior to the first trial of Davis, Jex made a plea offer to the state on Davis's behalf. The state rejected this plea offer and made no counteroffer.

- The case proceeded to trial, resulting in a hung jury.

- The second trial was scheduled approximately twenty months later.

- During this twenty-month period, the state made no plea offer.

- During jury selection for the second trial, Jex' co-counsel approached the state and made a second plea offer on Davis's behalf. The state rejected this offer and, for the first time, made a counteroffer. Davis accepted the counteroffer, the first one made by the state.

- During a conference in chambers, while discussing the offer, the prosecutor stated that if costs for the jury were going to be assessed to the state, the offer was off the table.

- Ultimately, Jex agreed to pay the jury costs if the deal was going to "come off the table."

¶25. To be clear, Jex only agreed to pay "if the deal is going to come off the table." I would also clarify that the prosecutor, according to the record filed before us, made a statement in the hearing that contradicted the record as to how the final plea agreement came into being. During the discussions, the following occurred:

> BY HONORABLE JUDGE IRVING: And this is the first time the offer has been made?

> BY MR. JEX: Yes, Your Honor.

> BY MS. SHORTER: Actually, defense attorney Mr. Jex, came and asked if we would consider it.

But, actually, Jex did not ask the state to consider the offer being discussed. Jex's co-counsel proposed a plea agreement that would have resulted in five less years of incarceration. The state rejected this offer. The offer being discussed in chambers was the state's counteroffer, their first plea offer, which was accepted by Davis. The prosecutor also knew that the "somebody," as mentioned by the judge, that would have to pay the costs would be Davis as evidenced by her statement, "I forgot that the jury tax would be to the defendant, not to the State."

¶26. It warrants reiterating that the trial judge had every right to assess costs as she saw fit. In this case, however, it seems patently unfair that the state would be allowed to withdraw their plea offer unless the defendant paid the court costs. Davis accepted the first offer made by the state after having his two prior offers refused. It was the state that waited until the jury was present to make its first offer. While Jex was not under legal duress to pay the

12

costs, he was under duress as commonly defined.[1]   He was also under pressure to do right by his client. At best, Jex was given a "Hobson's choice."[2]

¶27.    Nevertheless, because the trial judge had a right to assess costs to the defendant and Jex's agreement to pay costs was not under legal duress, I specially concur.

**MAXWELL, ISHEE, GRIFFIS AND BRANNING, JJ., JOIN THIS OPINION.**

**SULLIVAN, JUSTICE, DISSENTING:**

¶28.    I disagree that Attorney Jex voluntarily made a "clear commitment to the trial court that he would pay for the jury costs." Maj. Op. ¶ 12. I agree with Justice Chamberlin that 1) the prosecutor "made a statement in the hearing that contradicted the record as to how the final plea agreement came into being," 2) the State "waited until the jury was present to make its first offer," and 3) it is unjust and "unfair"  to permit the State to withdraw its plea offer, unless the court costs were assessed to defense counsel. Sp. Con. Op. ¶¶ 25-26. Based on this Court's standard of review, I would find that the trial judge abused its discretion by participating in plea negotiations and ordering Jex to pay the jury costs for his client's criminal trial. It would be manifestly wrong and clearly erroneous to permit a trial judge to

---

[1] Merriam-Webster gives one definition of duress as "compulsion by threat." "Duress." *Merriam-Webster*, https://www.merriam-webster.com/dictionary/duress (last visited April 8, 2025).  The prosecutor absolutely threatened to withdraw the offer if the state were made to pay costs.

[2] "A 'Hobson's choice' is a free choice in which only one thing is actually offered. The term is often used to describe the illusion that choices are available.  The best known Hobson's choice is 'I'll give you a choice: take it or leave it[,]' wherein 'leaving it' is strongly undesirable."
*Hobson's choice*, Wikipedia, wikipedia.org/wiki/Hobson%27s_choice (last visited Mar. 6, 2025).  This is certainly the choice Jex was given.

13

assess costs to a criminal defense attorney that was zealously advocating for his client and had not disrespected the judge or the judicial system. Respectfully, I dissent.

¶29. The majority is correct that this Court has upheld the usage of Rule 3.13 of the Uniform Civil Rules of Circuit and County Court Practice in criminal matters. Maj. Op. ¶ 13 (quoting *Harris v. State*, 224 So. 3d 76, 82-83 (Miss. 2017)). In *Crosby v. State*, 760 So. 2d 725, 728 (Miss. 2000), we approved of the trial judge's assessment of jury costs to the defense attorney because he had engaged in tactics that were "deliberately set out to delay the trial after his motions for continuance had been denied." In *Harris*, the trial judge held a defense attorney in "direct criminal contempt" when his "refusal to abide by the court's order forced a continuance." *Harris*, 224 So. 3d at 77. Because the defense attorney's actions prohibited his client's trial from proceeding "as scheduled[,]" the Court upheld the assessment of costs under Rule 3.13. *Id.* at 83 (internal quotation mark omitted). In *Minka v. State*, this Court found that the trial court did not abuse its discretion by granting a mistrial and imposing on the defense attorney a $100 fine and jury costs "as his willful and improper behavior . . . resulted in the abrupt termination of the trial[.]" *Minka v. State*, 234 So. 3d 353, 360 (Miss. 2017) (alteration in original) (internal quotation marks omitted). In the above mentioned cases, this Court found that there was no abuse of discretion by the trial court for assessing costs to a defense attorney whose contemptuous behavior had interfered with or hindered the judicial process.

¶30. But the instant case is distinguishable. In this case, Jex was not being disrespectful to the trial court. Nor was he attempting to delay the judicial process. Rather, Jex was

14

attempting to *save* the plea deal that he had zealously negotiated for his client.[3] Rule 3.13 allows a court to assess jury costs "against whichever party . . . or attorney it deems appropriate, . . . for failure to notify the court of settlement of a case before 5:00 P.M. on the day before the trial." UCRCCC 3.13. The reasoning behind Rule 3.13 is to penalize the party or attorney that waited to resolve the matter. Here, the State as the prosecutor rejected multiple pleas offered by the defense and did not offer its own plea deal until after the trial had begun.[4]

¶31.    The majority states, "[the prosecutor's] decision that the State would not pay the jury costs does not represent prosecutorial misconduct[.]"[5] Maj. Op. ¶ 19. Additionally, the majority approves of the prosecutor advocating zealously for its client's interests, the State, "when she refused to pay the jury costs." *Id.* The majority is mischaracterizing the

---

[3] The "basic principles" of the Mississippi Rules of Professional Conduct are "the lawyer's obligation to zealously protect and pursue a client's legitimate interests, within the bounds of the law, while maintaining a professional, courteous, and civil attitude toward all persons involved in the legal system." M.R.P.C. Preamble.

[4] Because the trial court's order arose out of a criminal matter, the Mississippi Rules of Criminal Procedure apply. *See* MRCrP 1.1 (These rules "shall govern the procedure in all criminal proceedings, from arrest through post-trial motions, . . . except as otherwise provided in these Rules."). MRCrP 15.4(a)(1) states, "[t]he prosecuting attorney is encouraged to discuss and agree on pleas which may be entered by the defendant." In his separate opinion, Justice Chamberlin provides a detailed explanation surrounding the facts of the plea negotiations, Sp. Con. Op. ¶ 24, which demonstrates that the prosecutor's actions did not follow the spirit of this rule.

[5] Although the majority of our case law about prosecutorial misconduct concern statement(s) made by a prosecutor during trial, this Court has stated "[w]here prosecutorial misconduct endangers the fairness of a trial and the impartial administration of justice, reversal must follow." *Goodin v. State*, 787 So. 2d 639, 645 (Miss. 2001) (citing *Acevedo v. State*, 467 So. 2d 220, 226 (Miss. 1985)).

prosecutor's actions. The prosecutor did not merely declare its refusal to pay the jury costs. But the prosecutor declared also that if the State were to be taxed with the costs, then the plea deal was "off the table, because we aren't going to pay[.]" Maj. Op. ¶ 7. This declaration is an ultimatum, not an attempt to negotiate about the payment of jury costs.[6] *See* Maj. Op. ¶ 19 ("It is not only reasonable but expected for a prosecutor . . . [to negotiate] a plea bargain to consider the costs to the judicial system.").

¶32.    While praising the prosecutor's actions, the majority does not recognize the lengths that Jex went to advocate for his client. The State's ultimatum, *i.e.*, threat to take the plea "off the table," forced Jex to either agree to pay the costs or compromise his client's best interests.[7] This compulsion strong-armed Jex into agreeing to pay the jury costs. If Jex had not agreed to this ultimatum, then the deal would have been withdrawn, subjecting Jex's client to proceed with the criminal trial and to potentially receive a harsher sentence.

---

[6] The word *ultimatum* is defined as "a final proposition, condition, or demand[.]" *Ultimatum*, Merriam-Webster, https://www.merriam-webster.com/dictionary/ultimatum (last visited Mar. 12, 2025).

[7] His responses during the plea hearing demonstrate this:

Your Honor, *I will pay whatever* the jury costs *if the deal is going to come off the table*. I am just putting it on record that we were not offered this before today.

. . . .

Your Honor, you tell me what to pay and I'll pay it. *I don't think it's fair* but I will pay it.

(Emphasis added.)

16

¶33. Additionally, I would find that the trial court violated Mississippi Rule of Criminal Procedure 15.4 by involving herself in the plea discussion. Mississippi Rule of Criminal Procedure 15.4(b) states that "[t]he trial judge *shall not* participate in any plea discussion." MRCrP 15.4(b) (emphasis added). Unprovoked, the prosecutor informed the trial judge that she had forgotten to include the cost of the jury as part of the plea deal. It was at this point that the issue about jury costs arose. Instead of focusing solely on the terms agreed upon by the parties, the trial judge involved herself in the negotiations by stating, "there is no plea with the exception that somebody has to pay for that" and "I have no problem accepting a plea but we have the cost of the jury." The trial judge was demanding that jury costs be included in the plea deal. Essentially, the trial judge was forcing the parties to agree about which one would be responsible for paying the jury costs. But the payment of jury costs is not required or necessary to have a valid plea bargain because a trial judge has the authority and discretion to assess court costs. Upon learning the parties had not included jury costs as part of the negotiated deal, the trial judge could have either dismissed the parties to allow them to renegotiate the terms of the deal or, without input from the parties, assessed the costs as she deemed fit.

¶34. Because Jex was compelled to agree to the State's ultimatum to pay the jury costs, it would be a mistake to penalize a defense attorney that had not attempted to impede the judicial process. I would find that the trial court abused its discretion, I would reverse and

17

vacate the trial court's order requiring Jex to pay jury costs, and I would remand the case for further proceedings.

**KING AND COLEMAN, P.JJ., JOIN THIS OPINION.**