# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CP-01233-COA

**IN RE: KIMBERLY MONIQUE ROSS**            **APPELLANT**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/21/2024 |
| TRIAL JUDGE: | HON. TAMETRICE HODGES |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | KIMBERLY MONIQUE ROSS (PRO SE) |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 04/28/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McDONALD AND WEDDLE, JJ.**

**WEDDLE, J., FOR THE COURT:**

¶1. Kimberly Ross, appearing pro se, appeals the Hinds County Chancery Court's order finding her in contempt of court and denying her motion for the chancellor's recusal. She argues that (1) the chancellor violated her due process rights and (2) exhibited judicial bias and improperly denied her motion for recusal.[1] Finding no error, we affirm.

## FACTS

¶2. In February 2024, the chancery court denied Kimberly's emergency petition to modify custody. Aggrieved by the chancellor's decision, Kimberly filed a motion on February 9,

---

[1] Kimberly makes other claims on appeal regarding the custody dispute; however, her issues are not properly before this Court because she did not timely appeal the custody decision. The chancellor made a custody determination on February 8, 2024, and no appeal was taken from that decision. Kimberly's failure to timely appeal the custody matter bars our consideration of those issues. *Black v. Black*, 403 So. 3d 131, 134 (¶10) (Miss. Ct. App. 2025) (finding "if the notice of appeal is not timely filed, the appellate court simply does not have jurisdiction").

2024, seeking a change of venue, recusal of "the presiding court," and reconsideration.[2] The chancellor denied the motion. Kimberly subsequently filed several additional motions, which she never noticed for a hearing.

¶3.     On September 9, 2024, Kimberly filed an emergency motion for recusal, alleging that the chancellor had "rendered judgments based on hearsay, bias, prejudice, influence, and retaliation." Opposing counsel, Terrance High, asked for the court to deny her motion and requested that she pay his attorney's fees and costs associated with the filing.

¶4.     A hearing was held on October 21, 2024, on Kimberly's emergency motion for recusal. During the hearing, Kimberly stated that "everything that was said during the February hearing showed bias, prejudice, influenced, you know it was . . . it was not fair at all."[3] In support of her argument, Kimberly attempted to produce the transcript from the February 2024 custody hearing, but she was unable to locate a copy to present to the court.

¶5.     The chancellor also heard arguments from opposing counsel. On rebuttal, Kimberly remained unable to produce any documents to support her allegations. Accordingly, the chancellor moved forward with her ruling. While making a ruling on Kimberly's motion, the following exchange took place.

    The Court:     In regards to attorney fees, I am going to grant those because not

---

[2] In this motion, Kimberly requested recusal on the ground that the court lacked jurisdiction.

[3] During the hearing, opposing counsel and the chancellor pointed out that Kimberly had a history of making frivolous claims. The chancellor also noted, and Kimberly acknowledged, that after the custody ruling was made in February 2024, Kimberly threatened to sue the chancellor, opposing counsel, and anyone else "for so many million dollars."

only was this motion untimely, but it was frivolous.

Kimberly: It was not.

The Court: Ms. Ross, you don't talk, not during the Court's rulings. Don't talk. I'm going to grant the attorney fees. How much are you asking for Attorney High?

Mr. High: Your Honor, if the Court would allow me to supplement that to the Court.

The Court: Okay.

Mr. High: We'll have it to you this week.

The Court: All right. Once I get that back, Ms. Ross, you'll have 30 days to pay those fees. If those fees aren't paid, this Court will incarcerate you until those fees are paid.

Kimberly: I don't have the means to do that. If he's asking for a substantial amount and you're giving me 30 days to do that, there is no way possible to do that unless I'm given a payment plan or something of that nature. This is what I mean by the biasness.

The Court: Ms. Ross. Ms. Ross.

The Bailiff: Stop talking.

The Court: Ms. Ross.

The Bailiff: Stop talking.

The Court: Let me go ahead and hold you in contempt because you just won't. You won't. You won't quit.

Kimberly continued to interrupt the chancellor until the bailiff escorted her from the courtroom. Following the hearing, the chancellor entered an order finding that Kimberly was in willful contempt for violating Uniform Chancery Court Rule 4.03. Kimberly was assessed a $200 fine and ordered to serve seven days in the custody of the Hinds County Sheriff's

3

Department.

¶6.    The chancellor also entered an order denying Kimberly's motion for recusal. She found that the motion was untimely because she (the chancellor) had been presiding over the case since January 1, 2023, and that Kimberly failed to meet her burden of proof that the chancellor was biased and partial beyond a reasonable doubt. On November 5, 2024, Kimberly filed a notice of appeal regarding the order of contempt and order denying the motion for recusal.

**DISCUSSION**

## I.    Contempt of Court

¶7.    "Whether the contempt is civil or criminal hinges on the purpose of the contempt finding. If the primary purpose of the contempt order is to enforce the rights of private party litigants or enforce compliance with a court order, then the contempt is civil. But if the purpose is to punish the contemnor for disobedience of a court order, then the contempt is criminal." *Harris v. State*, 224 So. 3d 76, 80 (¶17) (Miss. 2017) (citing *Mingo v. State*, 944 So. 2d 18, 32 (¶50) (Miss. 2006)). In the case before us, the record reflects that the chancellor found Kimberly in contempt for disobeying the court's order to not interrupt the chancellor while rendering an opinion. Because the contempt is criminal in nature, the scope of review is ab initio. *In re Conservatorship of Bennett*, 418 So. 3d 1256, 1272 (¶39) (Miss. Ct. App. 2025) (citing *Seals v. Stanton*, 350 So. 3d 1051, 1058 (¶19) (Miss. 2022)). More specifically, the court determines from the beginning "whether the record proves a party guilty of contempt beyond a reasonable doubt." *Id*. (citing *In re Smith*, 926 So. 2d 878, 886 (¶9) (Miss.

4

2006)).

¶8. There are two forms of criminal contempt: direct and constructive. "Direct criminal contempt involves words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice." *Graves v. State*, 66 So. 3d 158, 160 (¶4) (Miss. Ct. App. 2010). "Punishment for direct contempt may be meted out instantly by the judge in whose presence the offensive conduct was committed." *Id*. (quotation mark omitted). "Unlike direct contempt, constructive contempt involves actions which are committed outside the presence of the court."[4] *In re Williamson*, 838 So. 2d 226, 237 (¶31) (Miss. 2002). The contempt occurred in the chancellor's presence; therefore, Kimberly's acts constituted direct criminal contempt.

¶9. The chancellor found Kimberly to be in willful contempt for violating Uniform Chancery Court Rule 4.03. Rule 4.03 prohibits interruptions: "No interruptions shall be allowed during the time that the chancellor is rendering an oral opinion, judgment, order, or ruling." UCCR 4.03. Although the chancellor warned Kimberly that she could not interrupt the chancellor while making a ruling, Kimberly continued to disobey the chancellor's order. Upon review of the record, we agree that Kimberly is guilty beyond a reasonable doubt of direct criminal contempt.

### II. Motion to Recuse

¶10. "This Court reviews the denial of a motion to recuse under an abuse-of-discretion

---

[4] In the case of constructive criminal contempt, we have held that defendants must be provided with procedural due process safeguards, including a specification of charges, notice, and a hearing. *In re Williamson*, 838 So. 2d 226, 237 (¶31) (Miss. 2002).

5

standard." *Good v. Sanders*, 418 So. 3d 1241, 1247 (¶22) (Miss. Ct. App. 2025) (quoting *Queen v. State*, 325 So. 3d 656, 665 (¶37) (Miss. 2021)). The chancellor denied Kimberly's motion for recusal, finding it both untimely and lacking diligence. On appeal, Kimberly argues that the chancellor "denied recusal despite clear bias, engaged in ex parte communications, and refused to consider compelling evidence of abuse and fraud."

¶11.   The Uniform Chancery Court Rules state that motions for recusal must "be served on the chancellor who is the subject of the motion within 30 days following notification to the parties of the name of the chancellor assigned to the case; or, if it is based upon facts which could not reasonably have been known to the filing party within such time, it shall be served within 30 days after the filing party could reasonably discover the facts underlying the grounds asserted." UCCR 1.11(C). In her order denying the motion for recusal, the chancellor stated that she had been presiding over the matter since January 1, 2023. Our Supreme Court has held that the "failure to seek recusal generally is considered implied consent to have the judge go forward in presiding over the case." *Rice v. State*, 134 So. 3d 292, 299 (¶17) (Miss. 2014). Kimberly never filed a motion for recusal until after the chancellor denied her motion to modify custody in February 2024.[5] She filed her emergency motion for recusal on September 9, 2024, because she believed the chancellor was biased. Kimberly argued that her bias became apparent during the February 2024 hearing, which was seven months before she filed her emergency motion for recusal. Thus, we find that

---

[5] Her first motion for recusal, which the chancellor ultimately denied, was on the ground of lack of jurisdiction. Kimberly subsequently filed several motions, but she never set the motions for a hearing.

Kimberly's argument is procedurally barred.

## CONCLUSION

¶12. For these reasons, we affirm the contempt order of the Chancery Court of Hinds County.

¶13. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, EMFINGER AND LASSITTER ST. PÉ, JJ., CONCUR. McCARTY, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION. WESTBROOKS, J., NOT PARTICIPATING.**

**McCARTY, J., SPECIALLY CONCURRING:**

¶14. One of the many roles tasked to our trial judges is to maintain civility in the courtroom, for "[a] judge shall require order and decorum in proceedings before the judge." Miss. Code Jud. Conduct Canon 3(B)(3). So judges may require courteousness from those who come before them, even though there may be lapses.

¶15. In contrast, judges are *required* to exercise courteousness to those who come before the Bench. The Canons of Judicial Conduct command that "Judges **shall** be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers and others with whom they deal in their official capacities[.]" Canon 3(B)(4) (emphasis added). The Comment to that Canon tells us that "Courts can be efficient and businesslike while being patient and deliberate."

¶16. The Supreme Court has explained the risks when judges fail to honor their part of the deal. "When a judge fails to hold himself to the required standard of demeanor, he places himself in a poor position to expect exemplary deportment from 'others subject to direction

7

and control.'" *Miss. Comm'n on Jud. Performance v. Moore*, 356 So. 3d 122, 128 (¶14) (Miss. 2023) (quoting Canon 3(B)(4)).

¶17.    This situation is certainly applicable to family law cases, where tensions and emotions may run high due to the extremely high stakes for the litigants, who may literally be facing the loss of their child to the court system.

¶18.    This may be further amplified when one or more parties are pro se. We all know that pro se litigants are held to more or less the same standard as attorneys—but our Supreme Court has also acknowledged that "pro se litigants are afforded some leniency" at the same time. *Sumrell v. State*, 972 So. 2d 572, 574 (¶6) (Miss. 2008). This simply recognizes the reality that our world of rules, precedent, and decorum can be overwhelming to navigate.

¶19.    It is clear here that the litigant was interrupting the trial court and this triggered the imposition of contempt. Our standard of review defers to such a finding given the proof in this case. However, it should be the rare case where that power is needed to control the courtroom, not the everyday one. Even when the litigants or lawyers before us experience slips in their patience or decorum, judges do not have to respond with a similar lack of patience. In the end, we must honor our commitment to the Canons—which mandate "that Judges shall be patient, dignified, and courteous[.]" Canon 3(B)(4).